**TASTERS LTD., INC., Petitioner,**

v.

**DEPARTMENT OF EMPLOYMENT SECURITY, Respondent.**

No. 920659–CA.

Court of Appeals of Utah.

Sept. 24, 1993.

Gary E. Doctorman and Richard M. Marsh, Salt Lake City, for petitioner.

Winston M. Faux and Emma R. Thomas, Salt Lake City, for respondent.

Before BILLINGS, GARFF and ORME, JJ.

## OPINION

ORME, Judge:

Petitioner, Tasters Limited, Inc., seeks review of the decision of the Board of Review of the Industrial Commission determining Tasters' workers to be employees and not independent contractors for purposes of Utah's Employment Security Act (UESA), Utah Code Ann. §§ 35–4–1 to –26 (1988). The Board rendered its decision in response to an earlier remand by this court. *Tasters Ltd. v. Department of Employment Sec.*, 819 P.2d 361 (Utah App.1991) (*Tasters I*). We reverse.

## FACTS

Tasters is in the business of providing workers, primarily at the request of food brokers and product manufacturers and their representatives (hereafter collectively referred to as "brokers"), for demonstrations of various products in grocery and department stores. Tasters maintains a list of approximately 2,000 individuals willing to perform demonstrations.[1]

These individuals contact Tasters, or vice versa, concerning the availability of demonstrations.[2] If a demonstration is available, Tasters will inform the individual of the time, place, and type of demonstration that is requested by the particular broker. The demonstrator is then free to accept or reject the demonstration for any reason, per-

sonal or otherwise. No reprimand or disciplinary action is taken against an individual who declines a demonstration.[3]

Upon acceptance of a particular demonstration, the demonstrator is solely responsible for its completion. Demonstrators are not, however, required to personally perform the demonstration. A demonstrator may choose to assign the demonstration to another individual. Tasters has no veto power over the choice of the replacement or even the practice of engaging a substitute. Indeed, Tasters frequently does not even have knowledge of the particular substitution. If the assigned demonstration is completed, by whomever and however, Tasters is obligated to pay the individual who originally accepted the demonstration.

When an individual accepts a demonstration, he or she ordinarily works according to the schedule, fixed by the broker, as communicated by Tasters. Demonstrators are, however, free to negotiate with the broker or store owner to change the time of the demonstration. Upon arrival at the store, the demonstrators are left unsupervised to perform the demonstration. There is no direct control over how a demonstration is conducted—the method and manner are left entirely to the discretion of the demonstrator. Tasters has, however, prepared and occasionally disseminated a one page list of fourteen "VERY IMPORTANT THINGS TO REMEMBER!!!" Nonetheless, Tasters provides no formalized training to the demonstrators.[4]

Any equipment needed for a demonstration, such as a card table, electric frying pan, crock pot, tablecloth, apron, and related utensils, is provided and paid for by the individual demonstrator. To the minimal extent necessary, demonstrators must use

---

1. Approximately 450 of the 2,000 individuals reside in Utah.

2. Some 80% of the jobs are filled by demonstrators who solicit a demonstration opportunity from Tasters.

3. If an individual has not performed a demonstration in over a year, that individual's name is automatically dropped from Tasters' computer list of available demonstrators.

4. Occasionally, a broker will request a training session when a new product is being introduced. In such a circumstance, Tasters will arrange the session but ordinarily it is run completely by the broker. Demonstrators are not required by Tasters to attend the training session, but if a demonstrator attends, he or she is paid by the broker—not by Tasters.

their own phones and office space as Tasters does not provide them with any such facilities. Moreover, demonstrators are responsible for any theft, breakage of their equipment, or any damage they cause to the premises or customers of a store.

Demonstrators must complete a one-page report at the conclusion of the demonstration indicating which product was demonstrated, the amount of product sold during the demonstration, and any expenses the demonstrator incurred for disposable items such as toothpicks, napkins, and paper cups. Both the store manager and the demonstrator are required to sign this report and both may include any feedback they deem relevant. The report is then submitted to Tasters for resubmission to the broker whose product was demonstrated. (Tasters does not use the report to evaluate the demonstrator's performance.) The report contains a list of charges, supported by receipts, of all the demonstrator's reimbursable expenses for disposable items. Reimbursement is made by the broker, not Tasters.

Once the demonstrator returns the report to Tasters, Tasters pays the individual the amount previously agreed upon for the demonstration. A demonstration which requires cooking or frying often pays more than a demonstration that only involves passing out ready-to-eat samples.

In 1989, Tasters sought a ruling from the Utah Department of Employment Security as to the status of its demonstrators under UESA, and Tasters' corresponding responsibility, if any, to make contributions to the unemployment compensation funds, as a result of then-recent changes in the statu-

tory test for determining whether a worker is an employee or an independent contractor. *See* Utah Code Ann. § 35–4–22(j)(5) (Supp.1989).[5] On August 31, 1989, the Department issued a formal determination that Tasters' demonstrators were employees, not independent contractors.[6] Tasters appealed to an Administrative Law Judge, who affirmed the Department's determination. Consequently, Tasters filed an appeal of the ALJ's decision with the Board of Review. On July 10, 1990, the Board entered its first decision affirming the determination that demonstrators were employees of Tasters. Tasters then filed a petition for writ of review with this court, which culminated in *Tasters I.* The Board relied on the twenty factors, (A)–(T), set forth in Utah Code Ann. § 35–4–22(j)(5) (Supp.1989),[7] to determine the status of Tasters' demonstrators. However, because "[n]o findings were made [by the Board] as to why some of the factors were insignificant, while others were considered significant," this court reversed the Board's determination and remanded the action for additional findings of fact. *Tasters I,* 819 P.2d at 367.

Upon remand, the Board changed its classification of eleven of the twenty factors, apparently as a consequence of its further consideration as ordered by this court.[8] Nonetheless, on September 9, 1992, the Board finalized its second decision, again concluding that "Tasters demonstrators are not independent contractors within the meaning of § 35–4–22[(j)(5)] of the Utah Employment Security Act."

Tasters has now petitioned this court for review of the Board's second decision. Tasters presents three key claims on ap-

---

5. We refer throughout this opinion to Utah Code Ann. § 35–4–22(j)(5) (Supp.1989). This section has been recodified and is now found at Utah Code Ann. § 35–4–22.3(3) (Supp.1992).

6. The Internal Revenue Service, applying precisely the same test, determined that Tasters' demonstrators were not employees but independent contractors, for purposes of income tax withholding and social security deductions.

7. Section 35–4–22(j)(5) is set forth in its entirety in the Appendix to this opinion.

8. The Board, in its first decision, determined that factors A, B, G, J, K, and R indicated employee status whereas factors D, E, L, S, and T indicated independent contractor status. The Board found factors C, F, H, I, M, N, O, P, and Q to be inapplicable. Upon remand, the Board changed its classification of factors C, E, H, J, M, N, O, P, Q, S, and T. In its second decision the Board found that factors A, B, C, G, K, M, O, P, and R indicated employee status, while factors D, H, L, N, and Q indicated independent contractor status. The Board determined that factors E, F, I, J, S, and T were inapplicable.

peal: (1) that the Board's findings of fact are not supported by substantial evidence; (2) that the Board exceeded the scope of its legislative authority by improperly interpreting and expanding key factors in the statute; and (3) that the Board incorrectly determined that demonstrators are employees and not independent contractors.[9]

## STANDARDS OF REVIEW

Our review of the Board's decision is governed by the applicable provisions of the Utah Administrative Procedures Act (UAPA), Utah Code Ann. § 63–46b–16(4) (1989). The cited section governs judicial review of formal adjudicative proceedings. Under this section, varying standards of review are applicable to agency decisions depending on the nature of the challenge to such decisions. UAPA requires this court to grant relief to a petitioner if, *inter alia,*

> (b) the agency has acted beyond the jurisdiction conferred by any statute;
>
> . . . . .
>
> (d) the agency has erroneously interpreted or applied the law;
>
> . . . . .
>
> (g) the agency action is based upon a determination of fact, made or implied by the agency, that is not supported by substantial evidence when viewed in light of the whole record before the court; [or]
>
> (h) the agency action is:
>
> (i) an abuse of the discretion delegated to the agency by statute[.]

Utah Code Ann. § 63–46b–16(4) (1989).

### A. Factual Findings

Tasters first challenges the correctness of the Board's findings of fact. Tasters claims that the Board's findings of fact are not supported by substantial evidence as required under section 63–46b–16(4)(g). Under UAPA, an agency's factual findings will be affirmed "only if they are 'supported by substantial evidence when

viewed in light of the whole record before the court.'" *Grace Drilling Co. v. Board of Review,* 776 P.2d 63, 67 (Utah App.1989) (quoting Utah Code Ann. § 63–46b–16(4)(g) (1988)). *See Department of the Air Force v. Swider,* 824 P.2d 448, 451 (Utah App. 1991).

In *First National Bank of Boston v. County Board of Equalization,* 799 P.2d 1163 (Utah 1990), the Utah Supreme Court stated that " '[s]ubstantial evidence' is that quantum and quality of relevant evidence that is adequate to convince a reasonable mind to support a conclusion." *Id.* at 1165. The Court also stated that appellate courts, when applying the substantial evidence test under UAPA, are required to consider not only the evidence supporting the Board's findings but also the evidence negating them. *Id. See Swider,* 824 P.2d at 451; *Grace Drilling,* 776 P.2d at 68. Additionally, it is important to note that the substantial evidence test mandates that the party challenging the Board's factual findings must marshall all of the evidence supporting the Board's findings and show that despite the supporting facts and all reasonable inferences that can be drawn therefrom, the findings are not supported by substantial evidence given the record as a whole. *Grace Drilling,* 776 P.2d at 68. *See Swider,* 824 P.2d at 451; *Heinecke v. Department of Commerce,* 810 P.2d 459, 464 (Utah App.1991); *Sampson v. Richins,* 770 P.2d 998, 1002 (Utah App.), *cert. denied,* 776 P.2d 916 (Utah 1989).

### B. Legal Conclusions

Tasters' second claim is that the Board erred in its interpretation and application of section 35–4–22(j)(5) in two closely related respects. First, Tasters asserts that the Board exceeded its legislatively delegated authority by improperly interpreting and applying key factors set forth in the statute. Second, Tasters argues that the Board erred in concluding that Tasters'

---

**9.** As a result of its argument, Tasters disputes—on one ground or another—the Board's classification of twelve factors: A, B, C, E, G, I, J, M, O, P, S, and T. Tasters additionally argues that factors D, H, N, and Q, which the Board determined indicated independent contractor status, were unreasonably found to be of only minimal significance.

demonstrators were employees and not independent contractors. Because both claims present challenges to the Board's legal conclusions, the standard of review utilized depends on the existence of a statutory grant of discretion to the agency. *Morton Int'l, Inc. v. State Tax Comm'n,* 814 P.2d 581, 583–89 (Utah 1991); *King v. Industrial Comm'n,* 850 P.2d 1281, 1285 (Utah App.1993).

 The Utah Supreme Court has held that where " 'there is a grant of discretion to the agency concerning the language in question, either expressly made in the statute or implied from the statutory language,' the agency is entitled to a degree of deference such that it should be affirmed if its decision is reasonable and rational." *Wagstaff v. Department of Employment Sec.,* 826 P.2d 1069, 1071–72 (Utah App.1992) (citing *Morton,* 814 P.2d at 589). Neither party asks us to revisit this court's determination in *Tasters I,* 819 P.2d at 364, that the Legislature granted discretion to the Board to interpret section 35–4–22(j)(5). Accordingly, this court will reverse the Board's ultimate determination, and upset its intermediate conclusions, only if we conclude they are irrational or unreasonable. *See* Utah Code Ann. § 63–46b–16(4)(h)(i) (1989). *See also King,* 850 P.2d at 1286; *SEMECO Indus. Inc. v. Auditing Div.,* 849 P.2d 1167, 1172 (Utah 1993) (Durham, J., dissenting). However, no agency enjoys the discretion to exceed the authority vested in it by the Legislature. Insofar as the Board has run afoul of this precept, as argued by Tasters, we will review its action for legal error, without deference. *See* Utah Code Ann. § 63–46b–16(4)(d) (1989). *See also Adams v. Board of Review,* 821 P.2d 1, 4 (Utah App.1991); *LaSal Oil Co. v. Department of Envtl. Quality,* 843 P.2d 1045, 1047 (Utah App.1992).

## INTRODUCTION TO ANALYSIS

It is elementary that each case should be decided on its own particular set of facts, and the present appeal turns on whether the facts and circumstances support findings which reasonably and rationally lead to a conclusion of employee status under UESA. In general terms,

> [a]n employee is one who is hired and paid a salary, a wage, or at a fixed rate, to perform the employer's work as directed by the employer and who is subject to a comparatively high degree of control in performing those duties. In contrast, an independent contractor is one who is engaged to do some particular project or piece of work, usually for a set total sum, who may do the job in his own way, subject to only minimal restrictions or controls and is responsible only for its satisfactory completion.

*Harry L. Young & Sons, Inc. v. Ashton,* 538 P.2d 316, 318 (Utah 1975).

In its decision, the Board concluded that the weight of the evidence did not support independent contractor status. In so deciding, the Board noted that section 35–4–22(j)(5) contains a presumption of employee status. We are advised in the Board's brief that the underlying objective of UESA is "to provide financial stability to the economy itself and to workers who lose their jobs through no fault of their own." The Board contends that if it was to err in either direction, the Legislature intended it to err in favor of finding employee status. Although we may agree with the Board's general observations, the Board is not privileged to commit error in the name of safeguarding the general scheme of UESA.

Upon review of the instant record, we detect a host of errors made by the Board in its analysis and fact finding.

## FACTORS DETERMINED NOT TO BE USEFUL

Although section 35–4–22(j)(5) allows the Board to consider only those factors which are applicable to a particular case, Tasters disputes the Board's determination that five of the twenty factors were inapplicable to this case.

### A. Factor (I): Equipment and Control

First, Tasters asserts that factor (I) was unreasonably determined to be inapplicable. Tasters argues that factor (I) is clear

on its face and that the Board's interpretation and application of this factor were unreasonable.

■ Factor (I) requires the Board to determine "whether the individual uses his or her own office, desk, telephone, or other equipment or is physically within the employer's direction and supervision." [10] The Board concluded this factor was not useful because "neither the individual demonstrators nor Tasters owns, operates or manages the sites where work is performed." Tasters contends that the Board unreasonably interpreted this factor to require an examination of whether the individual works at his or her own place of business or at the place of business of the employer, while the statute merely contemplates the ownership of *equipment* and the existence of employer supervision and direction.

The plain meaning of the statute does not support the Board's interpretation, nor does the Board point us to any legislative history suggesting that the focus of factor (I) is to be on the ownership of the workplace. As noted, the statute expressly states that the focus is to be on who owns the equipment used to perform the job and on whether the demonstrators are under the direction and supervision of Tasters. In setting forth a detailed twenty factor analysis for determining whether an individual is an employee or an independent contractor, the Legislature indicated with precision which considerations it deemed relevant to the determination. Had the Legislature intended ownership of the workplace to be a consideration, it could easily have expressly stated its intent. Inasmuch as the Legislature chose not to expressly include ownership of the workplace as a consideration, it was error for the Board to do so.

■ Turning to the evidence pertinent to factor (I), the record reveals that demonstrators use their own telephones incident to lining up demonstrations and their own equipment in performing the demonstra-

tions. They pay their own phone bills, transportation costs, and equipment expenses. Furthermore, Tasters provides no office space or telephone facilities for its demonstrators. Given this evidence, we conclude that the first part of factor (I), concerning equipment, indisputably points to independent contractor status.

The latter half of factor (I) focuses on whether the demonstrators are physically under Tasters' direction and supervision. Uncontroverted evidence shows that the method and manner of the demonstration is left completely up to the discretion of the demonstrator. While there is evidence that occasionally an employee from Tasters will visit a store where a demonstration is taking place—to offer assistance or tips—it is inconceivable that the five office personnel employed by Tasters, only three of whom are full-time, could actually supervise the multitude of demonstrators flung throughout six states. In all but the exceptional case, no one from Tasters is even physically present during a demonstration. Tasters does not perform any periodic evaluation of a demonstrator's performance. Tasters normally will not even know how a demonstrator performed unless a problem is specifically brought to its attention by a store manager or broker. Nor does Tasters direct the demonstrators as to which jobs they must perform. Tasters has no control over the demonstrator's selection or rejection of a particular demonstration.

Given these facts, we conclude that the Board unreasonably determined factor (I) to be inapplicable. The evidence pertinent to this factor overwhelmingly suggests independent contractor status.

#### B. Factor (E): Subcontracting Demonstrations

Tasters next challenges the Board's determination that factor (E) is inapplicable. Factor (E) requires the Board to decide "whether the individual has the right to

---

**10.** It should be noted that each factor is composed of two distinct parts separated by the word "or." Under this disjunctive framework, an affirmative response to the first part of a

factor indicates independent contractor status whereas an affirmative response to the latter portion of a factor indicates employee status.

hire, supervise, and pay other assistants pursuant to a contract under which the individual is responsible only for the attainment of a result or the individual hires, supervises, and pays workers at the direction of the employer." Tasters argues that the evidence indicates that demonstrators are permitted to delegate assignments to others without Tasters' approval or knowledge. However, the Board, while recognizing that this is factually correct, stated in its decision that

> [t]he record does not show that when a demonstrator does get a replacement there is any kind of a contract governing the replacement's work. Clearly that kind of a transfer of a demonstrator's job is not at all what is anticipated by factor (E) anyway because of the short term and untechnical nature of the work done by Tasters demonstrators.

The Board argues that factor (E) "anticipates an employer giving an assignment to a worker which is then broken up for completion by numerous individuals." The Board suggests that because there was no evidence that demonstrators "hired, supervised or paid assistants pursuant to a contract with Tasters for an assignment which Tasters expected to be broken down for completion by numerous individuals," this factor was inapplicable.

 Analyzing the Board's rationale as set forth in its decision and embellished in its brief, we conclude that it committed two errors in its interpretation. Initially, the Board appears to interpret "pursuant to a contract" to require a *written* contract between Tasters and its demonstrators allowing work to be subcontracted. As previously stated, making this kind of extra-legislative embellishment to the statute is inappropriate. Analyzing the statute's plain meaning, the uncontested facts establish that subcontracting is an accepted practice and that there is an understanding between Tasters and the demonstrators, albeit not reduced to writing, that a demonstrator can assign a demonstration to a replacement. Therefore, absent any showing that the Legislature intended for only written contracts to satisfy this prong, we conclude that the Board's restrictive interpretation is erroneous.

Additionally, the Board seeks in its argument to differentiate between dividing a job into numerous mini tasks and delegating an entire project to one individual. Again, the Board points to no legislative history or other basis for its interpretation that only particular variations of engaging assistants qualify under the statute. We cannot detect any legislative intent to distinguish between the two types of delegations of responsibility.

The uncontroverted evidence shows that "assistants" are engaged and supervised by demonstrators who need a replacement to perform a particular demonstration. The evidence clearly indicates that Tasters exercises no control over the practice of subcontracting; the demonstrators are free to hire whom they choose, pay them what they choose, and supervise the replacement as they see fit.

We conclude that the demonstrator's unfettered prerogative to control who performs the demonstration fulfills the "right to hire" requirement of factor (E) and that the accepted practice of delegating demonstrations is fully consistent with the contract between Tasters and the demonstrators. Accordingly, we hold that factor (E) inarguably points to independent contractor status and the Board's determination designating this factor as inapplicable is therefore unreasonable.

## C. Factors (S) and (T): Job Completion and Termination

 Tasters additionally challenges the Board's determinations with regard to factors (S) and (T). In the Board's first decision, both these factors were found to support independent contractor status, but this classification was changed upon remand to "inapplicable." Factor (S) focuses on "whether the individual may not be fired or discharged as long as he or she produces a result which meets contract specifications or may be discharged at any time." Similarly, factor (T) asks "whether the individual agrees to complete a specific service, and is responsible for its satisfac-

tion or is legally obligated to perform the service, or may terminate his or her relationship with the employer at any time."

The pertinent evidence indicates that demonstrators are engaged to perform a specific demonstration, and so long as that demonstration is completed, the demonstrator is paid in full. Moreover, the demonstrator is solely responsible for the completion of the demonstration, and, as previously noted, demonstrators must personally find a replacement to complete the demonstration if they cannot do so themselves. The evidence also indicates that Tasters does not "fire" anyone for inadequate performance; Tasters merely removes inactive or inadequate demonstrators from its computer list of available demonstrators. The president of Tasters testified without contradiction that a demonstrator who did not show up to perform the demonstration or who behaved poorly would simply not be called to conduct another demonstration for Tasters.[11] Moreover, if a store manager complains about a certain demonstrator, Tasters merely places a mark next to the demonstrator's name indicating that he or she should not be placed for future demonstrations at that particular store.

Given the evidence presented, the facts pertinent to both factor (S) and factor (T) clearly point to independent contractor status, as the Board initially determined.

D. Factor (J): Pacing and Sequence

■ Finally, Tasters argues that factor (J), concerning "whether the individual is free to perform services at his or her own pace or performs services in the order or sequence set by the employer," was unreasonably determined to be inapplicable. The Board in reaching its decision determined that a "[d]emonstrator['s] work consists of handing out samples to those who pass by for a set period of time. There is no 'pacing' involved in this kind of work and no ordered sequence of duties because of the

nature of the work." Thus, the Board found this factor inapplicable. Tasters, however, places great emphasis on the ability of demonstrators to conduct the demonstration in a manner and method of their own choosing. While demonstrators choose the manner and method in which they will perform the demonstration, the pace at which they work is completely beyond their control. The pace is undoubtedly set by the number of shoppers in the store, the level of shopper interest in the particular product, and the number of samples available for distribution. Accordingly, we hold that the Board's determination with respect to this factor was not irrational or unreasonable and is therefore sustained.

### FACTORS DETERMINED TO SHOW EMPLOYEE STATUS

Tasters urges this court to hold that the Board unreasonably concluded that seven factors, A, B, C, G, M, O, and P, each support employee status.

#### A. Factor (A): Schedules and Instructions

■ Factor (A) requires the Board to determine "whether the individual works his or her own schedule or is *required* to comply with another person's instructions about when, where, and how work is to be performed." Utah Code Ann. § 35-4-22(j)(5)(A) (Supp.1989) (emphasis added). The Board found that each demonstrator receives written instructions on how and when the demonstration is to be performed. The Board based this finding on a writing entitled "VERY IMPORTANT THINGS TO REMEMBER!!!," which lists fourteen guidelines concerning, *inter alia*, attire, length of breaks, punctuality, and demonstration tactics. The Board found that this list set forth binding requirements and consequently indicated employee status.

---

**11.** We note that this scenario is consistent with independent contractor status, as exemplified by the classic independent contractor, the plumber. If an individual called a plumber to fix broken pipes, and the plumber did not properly repair the plumbing or overcharged for the completed work, the individual would not "fire" the plumber—the individual would simply not call that plumber again. This is precisely how Tasters handles unsatisfactory demonstrators.

Tasters contends that the Board's finding is not supported by substantial evidence. Tasters contends that the evidence indicates that this list was merely prepared to avoid having to constantly answer recurring questions that demonstrators asked Tasters over and over again. Tasters claims that the list is not a set of requirements but merely a set of helpful hints.

We recognize that this list, read in isolation, is subject to mixed interpretations. Some of the items appear to be compulsory. For example, the list specifies that the demonstrator is to "[t]ake ½ hour lunch and two 15 minute breaks." On the other hand, innocuous items on the list such as "SMILE!!!," "[d]ress appropriately," and "[p]lease wear an APRON!," are such common-sense tips as to undercut any inference of mandatory directive. Most of the items are intrinsically neither mandatory nor advisory, suggesting the need to resort to extrinsic evidence regarding follow-up and enforcement before their actual nature can be judged. Due to the conflicting and ambiguous character of the list, and factor (A)'s specific mandate that the demonstrator be *required* to comply with this list in order to find indicia of employee status, consideration of such extrinsic evidence becomes particularly important.

There was no evidence that this list was given to every demonstrator.[12] The evidence indicates that, depending on the type of demonstration being done, as many as half the suggestions may not even be applicable. For example, a portion of the list is entitled *"PACKING YOUR BASKET."* It lists items that the demonstrator may want to bring to the demonstration such as a spatula, moist cloth, electric frying pan, and twenty-five foot extension cord. If, however, the demonstration does not require any cooking, there would be no need for the demonstrator to bring a frying pan, a spatula, or an extension cord. Thus, it makes no sense to find that such portions of the list set forth invariably applicable requirements. Furthermore, no demon-

strator has ever been fired or, apparently, otherwise disciplined for not adhering to something on the list. No procedures were in place by which Tasters endeavored to ensure or even check on compliance with the so-called requirements. Given the evidence presented, we conclude that the record, as a whole, does not substantially support a finding that this list set forth mandatory requirements of the sort typical of a routine employment relationship.

Next, this court must determine whether, absent the list as a factual basis for the Board's determination that factor (A) indicated employee status, the remaining pertinent evidence can support the Board's determination. It is uncontested that demonstrators are free to accept or decline jobs for any or no reason; Tasters does not require that a demonstrator work at all. It is completely up to the demonstrator to pick and choose which demonstrations, if any, they want to perform, thereby exercising total control over their own work schedule. Tasters does not require any demonstrator to work a specific job or even a certain number of jobs or hours.

We hold that the Board's determination that factor (A) supports employee status is unreasonable. Given the evidence of record, it is clear the demonstrators work their own schedule and therefore that factor (A) can only point to independent contractor status.

### B. Factor (B): Training

▊ Tasters contends that factor (B) clearly indicates independent contractor status, and the Board's finding to the contrary is unreasonable. In analyzing factor (B) the Board must determine "whether the individual uses his or her own methods and requires no specific training from the purchaser, or is trained by an experienced employee working with him or her, is required to take correspondence or other courses, attend meetings, and by other

---

12. This list was brought to the attention of the Board when it was attached to two questionnaires completed by Tasters' demonstrators, yet other demonstrators responding to the question-

naire did not attach it. The Board had mailed these questionnaires to an apparently random sample of demonstrators to solicit information regarding the operation of Tasters.

methods indicates that the employer wants the services performed." The Board also relied on the list of "VERY IMPORTANT THINGS TO REMEMBER!!!" as the basis for its finding that this factor supports employee status. As previously discussed, this list was not shown to constitute a set of mandatory requirements.

Tasters argues that the remaining evidence relevant to factor (B) indicates independent contractor status. The evidence reveals that demonstrators receive no training at the hands of an experienced fellow demonstrator, and that the occasional *nonmandatory* training session—arranged at a broker's request—is typically conducted by the broker. Nor are there any correspondence courses that a demonstrator is required by Tasters to take. As the Board acknowledges elsewhere in its findings, the job of a demonstrator is "untechnical," and thus there is no need for formal training. Further evidence also indicates that demonstrators are left unsupervised to perform the demonstration in a manner and method which they choose.

The evidence simply does not support the Board's determination that the list sets forth job requirements or that the evidence pertinent to factor (B) otherwise indicates employee status. Accordingly, we reverse the Board's determination as unreasonable and instead conclude, given the evidence of record, that factor (B) points to independent contractor status.

### C. Factor (G): Time Schedule

█ Tasters disputes the Board's finding that factor (G) indicates employee status. Factor (G), which on the surface seems to be only a slightly more focused version of factor (A), asks the Board to ascertain "whether the individual establishes his or her own time schedule or does the employer set the time schedule." While the Board concedes that Tasters does not set the time of the demonstration—instead this function rests with the brokers and store managers—it nonetheless determined that the demonstrators do not set their own hours. In analyzing this factor, the Board

apparently did not find it compelling that the vast majority of demonstrations are staffed by demonstrators who contacted Tasters to secure a demonstration opportunity or that the demonstrator has the opportunity to accept or reject a given demonstration based on the time or day it is scheduled to be performed, or on any other basis the demonstrator desires. As indicated in discussing factor (A), the record indicates that the demonstrators are in control of the demonstrators' work schedules. No evidence presented suggests that Tasters controls the demonstrators' work schedule. Indeed, the only evidence that someone other than the individual demonstrator regulates that schedule points to the broker.

Therefore, we conclude that the Board's determination that factor (G) indicates employee status is unreasonable. The evidence inarguably tilts more to independent contractor status.

### D. Factor (M): Expenses

█ Tasters challenges the Board's conclusion that factor (M) indicates employee status. Factor (M), with our emphasis, asks the Board to determine "whether the individual accounts for his or her own expenses or is *paid* by the employer for expenses." In making its determination, the Board placed great emphasis on Tasters' ability to "approve or disapprove questionable costs." The Board's decision, while factually correct in that the demonstrators do run their invoices for incidental expenses through Tasters, and Tasters subsequently approves or denies reimbursement, overlooks the critical fact that it is the broker—not Tasters—that actually *pays* for the incidentals. A plain reading of factor (M) does not support the Board's focus on Tasters' ability to authorize or disapprove reimbursement for certain expenditures. The statute expressly indicates that the focus is to be on who *pays* the expenses. Tasters asserts that since neither Tasters nor the demonstrator pays the incidental expenses, this factor should, at worst, be deemed inapplicable.[13] We agree and accordingly

---

**13.** As noted previously, all expenses of demon-

strating except those for disposable products

conclude that the Board's determination that this factor indicates employee status is unreasonable.

### E. Factor (O): Investment

■ In a similar vein, Taster challenges the Board's determination that factor (O) indicates employee status. Factor (O) requires that the Board decide "whether the individual has a real, essential, and adequate investment in the business or has a lack of investment and depends on the employer for such facilities." The Board concluded that because the necessary equipment can be purchased for approximately fifty to two hundred dollars, and most of the equipment can be used in the home as well as on the job, the cost of equipment cannot be viewed as a meaningful business investment.

The evidence indicates that 92% of Tasters' demonstrators make less than six hundred dollars per year performing demonstrations for Tasters. Therefore, an investment of fifty to two hundred dollars in comparison to such a minimal annual business income is both "real" and "adequate." It is also important to note that although the investment—when viewed from the individual demonstrator standpoint—may seem minimal, if Tasters were required to provide the necessary equipment to its approximately 2,000 demonstrators, the outlay would be gargantuan. Moreover, if a demonstrator did not invest in the equipment, he or she would be unable to perform any demonstrations, excepting the comparatively few "hand-out only" demonstrations, since Tasters does not provide equipment. Thus, the investment is "essential" to the demonstrator's ability to perform the job.

used in the demonstration are borne solely by the individual demonstrator.

**14.** Tasters also challenges the Board's finding that factors (P) and (C) indicate employee status. Upon review of the evidence, we cannot say that the Board's determination in these respects is unreasonable. Thus, we leave the Board's decision with respect to these two factors undisturbed.

The second portion of factor (O), stated with our emphasis, questions whether the individual "has a lack of investment *and* depends on the employer for such facilities." As previously noted, Tasters provides no equipment or facilities to demonstrators. While the demonstrators rely on Tasters to dispense information regarding available demonstrations along with the corresponding payment checks, they apparently depend on Tasters for little else. Accordingly, we hold that factor (O) supports only a determination of independent contractor status and the Board's decision to the contrary is unreasonable.[14]

### FACTORS INDICATING INDEPENDENT CONTRACTOR STATUS THAT WERE DETERMINED TO BE OF "MINIMAL SIGNIFICANCE"

■ Tasters argues that the Board unreasonably determined that three factors indicating independent contractor status, D, H, and N,[15] were only minimally significant. In reaching its determination, Tasters claims that the Board unreasonably interpreted and applied the pertinent factors.

### A. Factor (N): Tools

■ In effect, Tasters maintains that the Board relied on parochial generalizations to determine that factor (N) was of only minimal significance. In its determination, the Board stated that "these 'tools' [i.e., the equipment used by the demonstrators] are not the kind associated with an independent business venture." Factor (N), however, only requires that the Board ascertain "whether the individual furnishes his or her own tools or is furnished tools and materials by the employer." The inherent nature or purpose of the tools is not mentioned. While the Board conceded that

**15.** Tasters apparently also wished to argue that factor (Q) was unreasonably determined to be of minimal significance, yet except for one sentence stating this intent, the brief is devoid of any support for its position. Accordingly, we affirm the Board's determination on this factor. *See State v. Yates,* 834 P.2d 599, 602 (Utah App.1992) (declining to consider arguments which were not adequately briefed).

the demonstrators furnished their own tools, thereby satisfying factor (N), the Board effectively undercut any marginal advancement Tasters may have made by additionally concluding, without any basis in the statute, that the tools involved in a demonstration are not the right type of tools for purposes of the statute.

Tasters asserts that the statute does not authorize the Board to unilaterally decide which tools are typically used by independent contractors. Although not explicit in its reasoning, we note that the Board apparently concluded that tools generally associated with household use—e.g., frying pans, aprons, and spatulas—were not worthy of the same status accorded those tools associated with construction work—e.g., saws, hammers, and power drills—even though the latter can also be frequently found in household settings as well as on certain job sites. This court can discern no *legal* distinction between the two varieties of tools. We reject the Board's rationale that the character of the tools typically used in a demonstration renders this factor of only minimal significance and instead conclude that this factor must properly be weighed equally with the other factors in the final analysis.

### B. Factor (H): Outside Employment

■ Tasters contests the weight accorded by the Board to factor (H). Factor (H) focuses on "whether the individual is free to work when and for whom he or she chooses, or is required to devote full-time to the business of the employer, and is restricted from doing other gainful work." The Board, acknowledging that demonstrators fulfilled the independent contractor prong of this factor,[16] determined that because "the very nature of Tasters' business" makes it impossible for anyone to be a full-time demonstrator, the factor was only minimally significant. Tasters denies that an individual cannot be a full-time demonstrator and, moreover, claims that the Board unreasonably added a criterion,

that the individual work full-time, which is not found in the statutory language.

The Board has not provided us with any legislative history to support its position that the statute is only minimally significant except in situations where the independent contractor works full-time. "In examining the statute, we assume that its language 'was used advisedly by the Legislature,' and should be 'interpreted and applied according to its usually accepted meaning.'" *Fussell v. Department of Commerce*, 815 P.2d 250, 254 (Utah App. 1991) (quoting *West Jordan v. Morrison*, 656 P.2d 445, 446 (Utah 1982)). The language of factor (H) does not so much as hint that individuals must be engaged in full-time work in order for this factor to be fully applicable. Had the Legislature intended such a restriction, it could have easily stated its intent in this long and detailed statutory provision.

By creating stricter requirements than the statute contemplated, the Board has wrongly encroached upon the Legislature's domain. Accordingly, we hold that the Board's attempt to read in additional requirements is in error. Factor (H) must be accorded equal weight in making the ultimate determination.

### C. Factor (D): Assignment of Services

■ Tasters also claims the Board unreasonably read into factor (D), concerning "whether the individual's services may be assigned to others or must be rendered personally," the requirement that this practice—assignment of services—be engaged in frequently in order to be significant. The Board concluded that although a demonstrator may assign responsibility for a demonstration, they do so only infrequently; thus, the factor was held to be only minimally significant. As previously stated, this expansive approach on the part of the Board is in error. The Board has not pointed this court to any legislative indication that this restriction was to be imposed. As the demonstrators satisfy the plain

---

**16.** The evidence indicates that demonstrators, in addition to working for Tasters, are free to work for whomever they choose. In fact, a number of demonstrators have separate full-time jobs.

meaning of the independent contractor prong of factor (D), we hold that the Board's action in deeming this factor to be only minimally significant was unreasonable.

## LEGISLATIVE MINIMIZATION OF AGENCY DISCRETION

■ We would be remiss if we did not touch upon the Board's contention that the factors laid out in section 35–4–22(j)(5) are merely illustrative rather than mandatory considerations, leaving it considerable discretion in determining employee or independent contractor status. The contention is wholly untenable. Quite to the contrary, we believe the Legislature made a conscious decision to remove much discretion from the Board in dealing with these issues.

Originally, the Legislature had outlined a very general "ABC" test as the basis for determining employee or independent contractor status; this was later revised to an "AB" test.[17] When this section was again changed in 1989 to a specific twenty factor test, each with two contradictory components, the conclusion is inescapable that the Legislature intended to remove much of the subjectivity and discretion that the Board previously exercised under the former tests. We see no reason why the Legislature would have enacted a specific twenty factor test if it wished the Department to continue exercising the nearly unbridled discretion that it previously possessed under the prior statutory scheme. There is no indication that the Legislature intended its amendment to somehow be a more verbose recitation of precisely the same regime which had previously been in

effect. On the contrary, the Legislature clearly intended the new provision not to be a mere set of advisory or illustrative guidelines, but rather to be a less subjective, more precise framework to be meticulously followed.

## SUMMARY AND CONCLUSION

Upon our review of the record, we conclude that a number of the Board's findings of fact are not supported by substantial evidence when viewed in light of the whole record. Moreover, the properly supported findings and the undisputed facts of record do not reasonably and rationally support the Board's determination that an employment relationship exists between Tasters and the demonstrators. We hold that factors A, B, D, E, G, H, I, L, M, N, O, Q, S, and T support independent contractor status, while only factors C, K, P, and R indicate employee status.[18] We recognize that in instances where there is a more even split between the factors supporting independent contractor status and those supporting employee status, it may be necessary to remand in order to allow the Board to carefully balance the factors in making the ultimate determination of whether individuals are independent contractors or employees. However, no such exercise is necessary here because the balance of factors so overwhelmingly compels a determination that the demonstrators are independent contractors. The Board's decision is therefore reversed.

BILLINGS and GARFF, JJ., concur.

## APPENDIX

Utah Code Ann. § 35–4–22(j)(5) (Supp. 1989) provides as follows:

> (C) The individual is customarily engaged in an independently established trade, occupation, profession, or business of the same nature as that involved in the contract of service.
> Utah Code Ann. § 35–4–22(j)(5) (Supp.1985). This section was later amended to delete subsection (B), with what had been (C) becoming (B), resulting in the "AB" test. *See* Utah Code Ann. § 35–4–22(j)(5) (Supp.1987).

---

**17.** The original "ABC" test, adopted in 1981, stated that services performed were deemed to be employment unless it was shown that

(A) The individual has been and will continue to be free from control or direction over the performance of those services, both under his contract of hire and in fact;

(B) The service is either outside the usual course of the business for which the service is performed or that the service is performed outside of all the places of business of the enterprise for which the service is performed; and

**18.** The remaining factors, F and J, are properly determined to be inapplicable to this case.

Services performed by an individual for wages or under any contract of hire, written or oral, express or implied, are considered to be employment subject to this chapter, unless it is shown to the satisfaction of the commission that the individual is an independent contractor. The commission shall analyze all of the facts in Subsections (A) through (T) under the common-law rules applicable to the employer-employee relationship to determine if an individual is an independent contractor. An individual is an independent contractor if the weight of the evidence supports that finding. The following factors are to be considered if applicable:

(A) whether the individual works his or her own schedule or is required to comply with another person's instructions about when, where, and how work is to be performed;

(B) whether the individual uses his or her own methods and requires no specific training from the purchaser, or is trained by an experienced employee working with him or her, is required to take correspondence or other courses, attend meetings, and by other methods indicates that the employer wants the services performed;

(C) whether the individual's services are independent of the success or continuation of a business or are merged into the business where success and continuation of the business depends upon those services and the employer coordinates work with the work of others;

(D) whether the individual's services may be assigned to others or must be rendered personally;

(E) whether the individual has the right to hire, supervise, and pay other assistants pursuant to a contract under which the individual is responsible only for the attainment of a result or the individual hires, supervises, and pays workers at the direction of the employer;

(F) whether the individual was hired to do one job and has no continuous business relationship with the person for whom the services are performed or continues to work for the same person year after year;

(G) whether the individual establishes his or her own time schedule or does the employer set the time schedule;

(H) whether the individual is free to work when and for whom he or she chooses, or is required to devote full-time to the business of the employer, and is restricted from doing other gainful work;

(I) whether the individual uses his or her own office, desk, telephone, or other equipment or is physically within the employer's direction and supervision;

(J) whether the individual is free to perform services at his or her own pace or performs services in the order or sequence set by the employer;

(K) whether the individual submits no reports or is required to submit regular oral or written reports to the employer;

(L) whether the individual is paid by the job or on a straight commission or is paid by the employer in regular amounts at stated intervals;

(M) whether the individual accounts for his or her own expenses or is paid by the employer for expenses;

(N) whether the individual furnishes his or her own tools or is furnished tools and materials by the employer;

(O) whether the individual has a real, essential, and adequate investment in the business or has a lack of investment and depends on the employer for such facilities;

(P) whether the individual may realize a profit or suffer a loss as a result of services performed or cannot realize a profit or loss by making good or poor decisions;

(Q) whether the individual works for a number of persons or firms at the

same time or usually works for only one employer;

(R) whether the individual has his or her own office and assistants, holds a business license, is listed in business directories, maintains a business telephone, or advertises in newspapers or does not make services available except through a business in which he or she has no interest;

(S) whether the individual may not be fired or discharged as long as he or she produces a result which meets contract specifications or may be discharged at any time; and

(T) whether the individual agrees to complete a specific service, and is responsible for its satisfaction or is legally obligated to perform the service, or may terminate his or her relationship with the employer at any time.