V–1 OIL COMPANY, Petitioner,

v.

DEPARTMENT OF ENVIRONMENTAL QUALITY, DIVISION OF ENVIRONMENTAL RESPONSE AND REMEDIATION, Respondent.

No. 940524–CA.

Court of Appeals of Utah.

Sept. 28, 1995.

Peter Stirba, Linette B. Hutton, Benson L. Hathaway, Jr., and Margaret H. Olson, Salt Lake City, for Petitioner.

Melissa M. Hubbell and Jan Graham, Salt Lake City, for Respondent.

Before ORME, BENCH and BILLINGS, JJ.

## OPINION

BILLINGS, Judge:

V–1 Oil Company (V–1) petitions for review of the Utah Solid and Hazardous Waste Control Board's (the Board) findings and conclusions that certain of V–1's underground storage tanks (UST) are subject to regulation under the Utah Underground Storage Tank Act (the Act), Utah Code Annotated Sections 19–6–401 to –427 (Supp. 1994). We affirm.

## FACTS

In 1971, V–1 constructed a service station in Salt Lake City, Utah (the station) and installed two USTs at the station. Since 1971, V–1 has continuously used the two tanks to store and dispense gasoline. Pursuant to the requirements of the Act, V–1 registered the two tanks with the Department of Environmental Quality, Division of Environmental Response and Remediation (DERR).

Some months after completing construction of the station, V–1 purchased two used 4,000–gallon USTs and installed them at the station. V–1 acknowledges that one of the tanks remains buried at the station (the third tank), but disputes the continued existence of another tank (the fourth tank) at the station. V–1 claims that it never connected the third or fourth tank to product dispensers nor used either tank for any purpose. V–1 has not registered either tank with DERR.

In 1992, DERR received a letter reporting the existence of two unregistered USTs at the station. On February 11, DERR contacted V–1 and requested inventory and tank tightness records for the station. On February 21, 1992, DERR visited the station. V–1 refused to allow DERR to inspect the station for USTs and refused to produce any inventory or tank tightness records. Nevertheless, while at the station, DERR observed "what appeared to be a cracked concrete pad over an underground tank which had been paved over."

On May 26, 1992, DERR assessed V–1 fees on the two registered tanks, as well as on the third tank. DERR also notified V–1 at that time that its certificate of compliance would be revoked if all fees, assessments, and penalties were not paid by August 30, 1992.

On August 31, 1992, V–1 filed a complaint in the Third District Court, requesting that DERR be enjoined from revoking V–1's certificate of compliance or taking any sort of enforcement action. Following a hearing on September 24, 1992, the court ordered (1) V–1 to deposit its registration fee with the court; (2) DERR to forestall revocation of V–1's certificate of compliance until an administrative hearing was held and appealed; and (3) V–1 to allow DERR to inspect the station.

On October 22, 1993, V–1 allowed DERR to inspect the third tank. After removing the asphalt covering the third tank fill cap, DERR obtained a serial grab sampling of the substance at the bottom of the tank (which

was estimated to be one inch to one and one-half inches deep). V–1 and DERR each had testing and analysis conducted on the substance. The tests detected varying levels of petroleum hydrocarbons, which is a regulated substance under section 19–6–402(22) of the Act. *See* Utah Code Ann. § 19–6–402(22) (Supp.1994).

This and other evidence was presented at an administrative hearing held November 10 and 19, 1993 before the Executive Secretary of the Board. The presiding officer concluded that both the third and fourth tanks were subject to DERR regulation.[1] The Executive Secretary adopted the presiding officer's recommended findings of fact and conclusions of law and order and issued its final order accordingly. V–1 appealed that order to the Board. Following a hearing June 9, 1994, the Board adopted the Executive Secretary's findings and conclusions, made additional findings and conclusions, and affirmed the Executive Secretary's order. V–1 now petitions this court to review the Board's decision.

## STANDARDS OF REVIEW

The Utah Administrative Procedures Act (UAPA) delineates standards we are to employ when reviewing formal adjudicative proceedings. *See* Utah Code Ann. § 63–46b–16(4)(a)–(h) (1993); *Morton Int'l, Inc. v. State Tax Comm'n,* 814 P.2d 581, 584 (Utah 1991); *Tasters Ltd. v. Department of Employment Sec.,* 863 P.2d 12, 18 (Utah App. 1993) (*Tasters II* ). Our review varies depending on the nature of the challenge. *Tasters II,* 863 P.2d at 18.

V–1 challenges the Board's decision on several grounds. First, V–1 argues the Board erroneously interpreted a provision in the Act delineating which underground storage tanks must be registered and subject to regulation. This allegation implicates subsection (d) of section 63–46b–16(4), which permits this court to grant V–1 relief if we determine that the Board "has erroneously interpreted or applied the law." Utah Code Ann. § 63–46b–16(4)(d) (1993).

In *Morton International,* the Utah Supreme Court held that claims brought pursuant to subsection (d), challenging an agency's statutory construction, "should only be given deference when there is a grant of discretion to the agency concerning the language in question, either expressly made in the statute or implied from the statutory language." 814 P.2d at 589. The governing statute in this case, section 19–6–407 of the Act, contains no explicit grant of discretion to the Board. Moreover, DERR has not argued, nor does it appear, that the statutory terms in question "connote a general grant of discretion" to the Board. *Id.* We therefore review the Board's interpretation of "in use" under a correction-of-error standard. *Id.; Avis v. Board of Review of Indus. Comm'n,* 837 P.2d 584, 586 (Utah App.1992).

V–1 also challenges the Board's factual findings that (1) the third tank is "in use" and (2) the fourth tank exists at the station. Section 63–46b–16(4)(g) of UAPA governs these issues, permitting this court to grant V–1 relief if we conclude that the Board's action "is based upon a determination of fact, made or implied by the agency, that is not supported by substantial evidence when viewed in light of the whole record before the court." Utah Code Ann. § 63–46b–16(4)(g) (1993). Substantial evidence is " 'that quantum and quality of relevant evidence that is adequate to convince a reasonable mind to support a conclusion.' " *Tasters II,* 863 P.2d at 18 (quoting *First Nat'l Bank of Boston v. County Bd. of Equalization,* 799 P.2d 1163, 1165 (Utah 1990)). In reviewing the record as a whole, we consider not only the evidence supporting the Board's findings, but also the evidence negating them. *Id.* However, " 'this court will not substitute its judgment as between two reasonably conflicting views, even though we may have come to a different conclusion had the case come before us for de novo review.' " *Tasters Ltd. v. Department of Employment Sec.,* 819 P.2d 361, 365 (Utah App.1991) (*Tasters*

---

**1.** On appeal, V–1 does not contest the officer's conclusion that the fourth tank is regulated under the Act, but argues only that the officer's finding that the fourth tank exists at the station is unsupported by the evidence.

*I* ) (quoting *Grace Drilling v. Board of Review,* 776 P.2d 63, 68 (Utah App.1989)).

## I. INTERPRETATION OF "IN USE"

■ V–1 contends that section 19–6–407(1)(a) of the Act, delineating which underground storage tanks must be registered, does not apply to the third tank. V–1 argues that, since the third tank was neither closed after January 1, 1974, nor "in use," it is not subject to DERR regulation.[2] Whether a UST is in use for purposes of section 19–6–407(1)(a) is a question of first impression in Utah.[3]

Section 19–6–407(1)(a) provides:

Each owner or operator of an underground storage tank shall register the tank with the executive secretary if the tank:

(i) is *in use;* or

(ii) was closed after January 1, 1974.

Utah Code Ann. § 19–6–407(1)(a) (Supp. 1994) (emphasis added). The Board concluded that "a tank is 'in use' if it contains a regulated substance or petroleum. The tank need not be used to dispense petroleum; it need only be used to store or contain petroleum in order to be 'in use.'" V–1, on the other hand, asserts that "'in use' means presently being used for storage, or dispensing of a regulated substance."

There is no usual and accepted meaning of the terms "in use" in the context of USTs. The record reveals that the federal regulations, Utah's administrative rules, the presiding officer's conclusions, the Board's conclusions, and V–1's interpretation all provide

slightly different definitions of the terms. Furthermore, the terms are of such a general nature that dictionary definitions are not helpful. We therefore construe the terms, as the Board did, in light of pertinent rules of statutory construction.

■ In *Clover v. Snowbird Ski Resort,* 808 P.2d 1037 (Utah 1991), the Utah Supreme Court outlined several rules of statutory construction that are helpful here. First, "a statute should not be construed in a piecemeal fashion but as a comprehensive whole." *Id.* at 1045. Additionally, " '[i]f there is doubt or uncertainty as to the meaning or application of the provisions of an act, it is appropriate to analyze the act in its entirety, in light of its objective, and to harmonize its provisions in accordance with its intent and purpose.' " *Id.* (quoting *Osuala v. Aetna Life & Casualty,* 608 P.2d 242, 243 (Utah 1980)). "Finally, in dealing with an unclear statute, this court renders interpretations that will 'best promote the protection of the public.' " *Id.* (quoting *Curtis v. Harmon Elec.,* 575 P.2d 1044, 1046 (Utah 1978)).

■ Applying these rules, we look beyond the narrow confines of section 19–6–407 to ascertain whether other provisions and objectives of the Act elucidate the meaning of "in use." Looking to the definition section of the Act, the Board noted that the Act defines a "closed" UST, in part, as one that is "no longer in use." *See* Utah Code Ann. § 19–6–402(7) (Supp.1994). From this, the Board surmised, "the plain implication is that a tank that once stored petroleum is either closed or still in use." Next, the Board read section

---

**2.** Additionally, V–1 argues it is neither an owner nor operator, as those terms are defined by the Act, of the third and fourth tanks and thus is not required to register the tanks under § 19–6–407. Whether V–1 is an owner or operator of the tanks turns on whether the tanks are in use. *See* Utah Code Ann. § 19–6–402(17) (1993) (defining "operator" as person in control of tank in use); *id.* § 19–6–402(18) (defining "owner" as person who owns tank in use). Thus, because the argument provides no separate ground upon which to find that the third and fourth tanks are not subject to regulation, we do not address it separately from V–1's argument that the third and fourth tanks are not in use.

**3.** V–1 advances three arguments on appeal in support of its contention that the third tank is not

in use and therefore not subject to regulation under the Act. First, V–1 argues that, in interpreting the terms "in use," the Board erroneously relied on the Office of Solid Waste and Emergency Response's (OSWER) Directive 9610.3, which has been superseded by regulation. Second, V–1 assails the Board's reliance on Utah Administrative Rule 311–200–1(29), which defines "in use," arguing that the rule cannot be retroactively applied in this case. Third, V–1 argues that the Board construed § 19–6–407 contrary to its plain language. Because we conclude the Board's interpretation of "in use" is consistent with accepted principles of statutory construction, we need not address the propriety of its alleged alternative reliance upon OSWER Directive 9610.3 or Rule 311–200–1(29).

19–6–407 (providing that "in use" USTs must be registered) in conjunction with the section immediately following it. Section 19–6–408 provides: "The department may assess an annual underground storage tank registration fee against owners or operators of underground storage tanks that have not been closed." *Id.* § 19–6–408(1). From this, the Board concluded: "If USTs that once stored petroleum but were not emptied and cleaned of all liquids [i.e., USTs that have not been closed] are subject to a registration fee under 19–6–408, then it follows that such USTs are also subject to be registered under 19–6–407 as being 'in use.'"[4]

In addition to construing section 19–6–407 together with related sections in the Act, the Board analyzed the section in light of the Act's purposes and objectives. The Board noted that, under V–1's interpretation of section 19–6–407, if a gas station wished to avoid regulation under the Act in order to avoid the expense of the requirement of properly closing a UST, it need only remove most of the petroleum from its USTs and cover the fill caps over with asphalt. Such an interpretation, the Board explained, would render the closure requirements of the Act meaningless:

No where does the Utah UST Act allow USTs to escape closure requirements and from being regulated in such a manner. The purpose of Utah's Environmental Code is to safeguard public health and protect the environment. Utah Code Ann. § 19–1–102. It follows that the Utah UST

Act is to ensure that USTs do not threaten public health or the environment by requiring USTs to either be cleaned and emptied then filled with inert solid material or removed [i.e., "closed"], or go through the "in use" procedures of registration, fees (Petroleum Storage Tank fees assure cleanup from a leaking UST), and tank tightness tests.

The Board's extensive analysis of the terms "in use" employs appropriate and longstanding rules of statutory construction, harmonizing section 19–6–407 with other sections in the Act and with the overall purpose of the Act's registration, fee assessment, and closure requirements. This approach clearly supports the Board's determination that the tank is "in use."

■ Furthermore, pursuant to its statutory grant of authority, *see* Utah Code Ann. § 19–6–403(1) (Supp.1994), the Board adopted Rule 311–200–1(29) in October, 1992, which defines "in use." The rule provides:

"In use" means that an operational, inactive or abandoned underground storage tank contains a regulated substance, sludge, dissolved fractions, or vapor which may pose a threat to human health, safety or the environment as determined by the Executive Secretary.

Utah Admin.R. 311–200–1(29) (1993). Administrative rules adopted pursuant to a statutory grant of authority have the full force and effect of law. *Horton v. Utah State*

---

**4.** The Code of Federal Regulations provides that certain tanks may be exempt from regulation if they contain de minimus concentrations of regulated substances. Specifically, 40 C.F.R. § 280.10, enacted in 1988, provides:

(b) The following UST systems are excluded from the requirements of this part [referring to Part 280, which is entitled "Technical Standards and Corrective Action Requirements for Owners and Operators of Underground Storage Tanks (UST)"]:

. . . .

(5) Any UST system that contains a *de minimis* concentration of regulated substances.

40 C.F.R. § 280.10 (1994). On appeal, V–1 argues that the third tank is exempt from regulation under this provision. However, V–1 did not raise this argument in the proceedings below: namely, counsel did not elicit any testimony that in fact the tanks qualified for the de minimus exception at the hearing before the presiding

officer, nor was such an exception claimed in counsel's closing argument. "Issues not raised before the administrative agency are waived on appeal." *Gibson v. Board of Review of Indus. Comm'n*, 707 P.2d 675, 677 (Utah 1985).

V–1 relies upon *Govert Copier Painting v. Van Leeuwen*, 801 P.2d 163 (Utah App.1990), for the proposition that it need not have raised this issue below because evidence relevant to the issue was adduced at trial. V–1, however, misunderstands *Govert Copier*, which stands for the converse proposition that we will not consider an issue on appeal when the party raising the issue relies upon evidence that was *not* before the trial court. *Id.* at 170.

We also note that, even if we deemed the issue raised, the only evidence in the record regarding the exemption is testimony from the State's expert witness indicating that the concentrations of regulated substances in the third tank would not qualify as de minimus.

*Retirement Bd.*, 842 P.2d 928, 932 n. 2 (Utah App.1992). Thus, like a legislative amendment that clarifies ambiguous terms in a statute, such administrative rules may be used to interpret ambiguous statutory provisions.[5] *See In Re Marriage of Blickenstaff,* 71 Wash.App. 489, 859 P.2d 646, 648–49 (1993). Rule 311–200–1(29)'s construction of the terms "in use" also clearly supports the Board's interpretation.

Based on the foregoing, we affirm the Board's determination that the third tank is "in use" and therefore subject to regulation under the Act.

## II. SUFFICIENCY OF FINDING THAT FOURTH TANK EXISTS [6]

■ Finally, V–1 argues that the Board's finding that the fourth tank exists is not supported by substantial evidence when viewed in light of the whole record.[7]

The record contains the following evidence supporting the Board's finding that a fourth tank is buried at the station: (1) a former construction supervisor's testimony that he installed the third and fourth tank, (2) a map of the station indicating where additional tanks would be buried and testimony that V–1 anticipated the contingency of dispensing unleaded gasoline at a future date, and (3) a letter from an informant, corroborated by the undisputed discovery of the third tank, alleging that a third and fourth tank were buried at the station.

The record also contains the following evidence negating the Board's finding: (1) the former construction supervisor's testimony that he believed only three tanks were presently buried at the station, and (2) the testimony of V–1 employees that no employee knew of the existence of a fourth tank at the station. The supervisor's testimony is unpersuasive, as the supervisor could not state any basis for his belief that one of the tanks had been removed, and V–1's president testified that he did not believe any tank had been removed. The employees' testimonies establish only that many V–1 employees were not aware of the existence of a third or fourth tank at the station.

"[V]iewed in light of the whole record before the court," Utah Code Ann. § 63–46b–16(4)(g) (1993), we conclude the Board's finding is supported by substantial evidence. Bearing in mind that " 'this court will not substitute its judgment as between two reasonably conflicting views, even though we may have come to a different conclusion had the case come before us for de novo review,' " *Tasters I,* 819 P.2d 361, 365 (Utah App.1991) (quoting *Grace Drilling v. Board of Review,* 776 P.2d 63, 68 (Utah App.1988)), the evidence is of " 'that quantum and quality of relevant evidence that is adequate to convince a reasonable mind to support a conclusion.' " *Tasters II,* 863 P.2d 12, 18 (Utah App.1993) (quoting *First Nat'l Bank of Bos-*

5. This case was initiated in August of 1992. We do not apply Rule 311–200–1(29) retroactively, but rely upon it merely for interpretive guidance.

6. V–1 also assails the Board's finding that the third tank is in use. However, V–1's argument is grounded in its own interpretation of the meaning of "in use." If, rather than accepting V–1's claim that "in use" means "presently being used for storage, or dispensing of a regulated substance," we adopt the Board's interpretation that "in use" means "containing a regulated substance," then the evidence is uncontroverted that the third tank is "in use." Both DERR's and V–1's analysis of the substance at the bottom of the third tank indicated the presence of petroleum hydrocarbons, which is a regulated substance. Furthermore, there is evidence that supports a finding that V–1, at some point, used the third tank to store unleaded gasoline. The presiding officer outlines this evidence in his recommended findings of fact and conclusions of law.

Rather than marshaling any of this evidence and showing that, when weighed against the contradictory evidence, the Board's finding is unsupported, *Tasters II,* 863 P.2d 12, 18 (Utah App. 1993), V–1 merely recites all the evidence favorable to its position and elucidates the various inferences that we should draw therefrom.

7. While this case has been on appeal, DERR filed a separate complaint in Third District Court (Case No. 940902360 CV) seeking, inter alia, to be allowed to inspect the fourth tank. The order was granted and an inspection took place on January 4, 1995, in which DERR obtained samples of substance contained in what was purported to be the fourth tank. V–1 claims, however, that DERR in fact obtained the samples from an additional fill port in the third tank. Because the issue had not been resolved by the inspection, it is not moot. *Cf. Franklin Fin. v. New Empire Dev. Co.,* 659 P.2d 1040, 1043 (Utah 1983); *Hurt v. Hurt,* 793 P.2d 948, 951 (Utah App.1990).

*ton v. County Bd. of Equalization,* 799 P.2d 1163, 1165 (Utah 1990)).[8]

## CONCLUSION

We conclude that the Board did not err in its interpretation of the terms "in use" in section 19–6–407(1)(a) of the Utah Underground Storage Tank Act. Employing the Board's interpretation, we affirm its factual finding that the third tank is in use and subject to regulation under the Act. Additionally, we affirm the Board's finding that the fourth tank exists at the station.

BENCH, J., concurs.

ORME, Presiding Judge, concurring

I concur, except that as to section I, I concur only in the result.

---

**8.** V–1 also claims that it was improperly required to prove that the third and fourth tanks are not in use, and that this burden should have fallen on DERR. We need not decide where the burden of proof properly lies because the Board concluded that, regardless, DERR had met the burden. In the presiding officer's conclusions of law, adopted by the Board, the officer stated:

This forum sees no need to make conclusions of law on the appropriate burden of proof. Even if the DERR had the burden of proof on all issues, the evidence is sufficient to establish by a preponderance of the evidence that V–1's third tank and fourth USTs are subject to the Utah UST Act requirements....