2001 UT App 239

**ANABASIS, INC., Petitioner,**

v.

**LABOR COMMISSION, Respondent.**

**No. 20000832.**

Court of Appeals of Utah.

Aug. 9, 2001.

Larrie A. Carmichael, Layton, for Petitioner.

Sherry Hayashi and Alan Hennebold, Salt Lake City, for Respondent.

Before Judges JACKSON, BENCH, and BILLINGS.

## OPINION

JACKSON, Associate Presiding Judge:

¶ 1 Anabasis, Inc. (Anabasis) seeks judicial review of the Utah Labor Commission Appeals Board (Appeals Board) decision affirming the penalty imposed on Anabasis for failure to provide workers' compensation insurance in violation of Utah Code Ann. § 34A–2–201 (Supp.2000) (the Insurance Statute) [1] Anabasis asserts that the outcome of this case, as succinctly stated by a former President in another proceeding, "depends upon what the meaning of the word 'is' is." Utah Code Ann. § 34A–2–211 (2)(a)(ii) (Supp. 2000) allows the Labor Commission (the Commission) to impose a penalty on employers if the employer "is conducting business without securing the payment of benefits in one of the three ways provided in [the Insurance Statute]." Anabasis argues that the word "is" in the statute relieves Anabasis of liability because "is" requires a present state of noncompliance at the time a penalty is imposed, and Anabasis had purchased work-

---

1. The applicable law in this case includes Utah Code Ann. § 34A–2–211 (Supp.1998), which became effective May 4, 1998; and Utah Code Ann. § 34A–2–201 (1997), which became effective July 1, 1997. The relevant portions of these statutes have not changed; thus, we cite to the most current version.

ers' compensation insurance by the time the Commission imposed the penalty. We affirm.

## BACKGROUND

¶ 2 Anabasis began doing business in Utah as "John's Salon" in 1994. Since then, Anabasis has continually employed two to six employees at the salon. In October 1998, the Utah Labor Commission (the Commission) received information that Anabasis did not have workers' compensation insurance. Subsequent investigation confirmed that this information was correct.

¶ 3 On January 6, 1999, the Commission sent a Notice of Noncompliance in Providing Workers' Compensation Insurance to Anabasis. This notice asked Anabasis to "provide proof of workers' compensation insurance," and warned that "[f]ailure to maintain workers' compensation insurance for ... employees could result in a penalty." Anabasis did not respond to the notice. On February 12, 1999, the Commission sent a Notice of Noncompliance and Intent to Assess Penalty (Notice) to Anabasis, stating that it intended to impose a $1,000 penalty on Anabasis for its failure to maintain coverage for the period of November 2, 1998 to January 12, 1999. Anabasis then obtained a policy for workers' compensation insurance with retroactive coverage to February 1, 1999. On March 3, 1999, and again on March 30, 1999, the Commission notified Anabasis that it was liable for the $1,000 penalty imposed pursuant to Utah Code Ann. § 34A–2–211 (2) (Supp. 2000).

¶ 4 Anabasis contested the penalty, but an administrative law judge from the Commission upheld the penalty, and the Appeals Board affirmed. Anabasis now petitions us to review the Appeals Board decision. We have jurisdiction pursuant to Utah Code Ann. §§ 34A–1–303 (6) (1997) and 78–2a–3 (2)(a) (1996).

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 5 Anabasis asserts that the word "is," as it is used in Utah Code Ann. § 34A–2–211(2)(a)(ii) (Supp.2000), relieves Anabasis

of liability. The parties do not dispute which statute controls this central issue, they only disagree on its interpretation. Thus, the central issue presents us with a question of statutory construction, which we review for correctness. *See Esquivel v. Labor Comm'n,* 2000 UT 66, ¶ 13, 7 P.3d 777 (stating, " 'matters of statutory construction are questions of law that are reviewed for correctness' ") (quoting *Platts v. Parents Helping Parents,* 947 P.2d 658, 661 (Utah 1997)).

■ ¶ 6 Anabasis next alleges that the Commission has a policy of imposing a penalty when an employer fails to comply with the Insurance Statute. Thus, alleges Anabasis, the Commission abused its discretion by "not exercising discretion at all" when it imposed the penalty on Anabasis. "When the Legislature has granted an agency discretion to determine an issue, we review the agency's action for reasonableness." *Caporoz v. Labor Comm'n,* 945 P.2d 141, 143 (Utah Ct.App. 1997).

■ ¶ 7 Finally, Anabasis argues that it is entitled to attorney fees under the Small Business Access to Justice Act. *See* Utah Code Ann. §§ 78–27a–1 to –6 (1996). We may award attorney fees at our discretion if a small business prevails on appeal from an agency action. *See id.* § 78–27a–5(1).

## ANALYSIS

¶ 8 The Insurance Statute requires that all Utah employers "secure the payment of workers' compensation benefits for [their] employees by: (1) insuring, and keeping insured, [with workers' compensation insurance]." [2] Utah Code Ann. § 34A–2–201 (Supp.2000). If an employer fails to insure and keep insured for workers' compensation, the employer faces many adverse consequences. The employer loses certain defenses in employee-initiated law suits, is guilty of a class B misdemeanor for each day it is not in compliance, can be enjoined from further business operations, can be ordered by a court to comply with the Insurance Statute,

---

2. An employer may also satisfy the Insurance Statute if it "obtain[s] approval from the division in accordance with Section 34A–2–201.5 to pay direct compensation as a self-insured employer."

Utah Code Ann. § 34A–2–201(3) (Supp.2000). However, Anabasis has not obtained this approval from the Commission.

and can have penalties imposed on it by the Commission. *See* Utah Code Ann. §§ 34A-2-207, -209 to -211 (1997 & Supp.2000). None of these remedies is exclusive. *See id.* Here, we examine the language of section 34A-2-211.

### I. The Meaning of the Statute

¶ 9 Anabasis and the Commission dispute the meaning of section 34A-2-211(2)(a), which states the following:

(2)(a) Notwithstanding Subsection (1), the [Commission] may impose a penalty against the employer under this Subsection (2):

(i) subject to the notice and other requirements of Title 63, Chapter 46b, Administrative Procedures Act; and

(ii) if the [Commission] believes that an employer of one or more employees is conducting business without securing the payment of benefits in one of the three ways provided in Section 34A-2-201.

Utah Code Ann. § 34A-2-211(2) (Supp.2000). " 'When we interpret statutes, our primary goal is to give effect to the [L]egislature's intent in light of the purpose the statute was meant to achieve.' " *State v. Cruz Perez,* 2000 UT App 65, ¶ 6, 999 P.2d 579 (citation omitted). The " 'statute should not be construed in a piecemeal fashion but as a comprehensive whole.' " *V-1 Oil Co. v. Dep't of Envtl. Quality,* 904 P.2d 214, 217 (Utah Ct. App.1995) (citation omitted). Further, "if there is doubt or uncertainty as to the meaning or application of the provisions of an act, it is appropriate to analyze the act in its entirety, in light of its objective, and to harmonize its provisions in accordance with its intent and purpose." *Id.* (internal quotations and citations omitted).

### A. Possible Interpretations of Section 34A-2-211(2)

¶ 10 The Commission argues that the word "is" in section 34A-2-211(2)(a)(ii) does not affect the Commission's ability to impose a penalty for failure to comply with the Insurance Statute, even though an employer has obtained workers' compensation insurance after a period of noncompliance. Anabasis argues that the word "is" in section 34A-2-

211(2)(a)(ii) allows the Commission to impose a penalty only if an employer does not have workers' compensation insurance on the date the Commission imposes the penalty. "Even if we were to accept the Commission's statutory interpretation as plausible, [Anabasis's] interpretation is likewise plausible. The statute would therefore be ambiguous...." *Belnorth Petroleum Corp. v. State Tax Comm'n,* 845 P.2d 266, 270 n. 8 (Utah Ct. App.1993); *cf. Hercules, Inc. v. State Tax Comm'n,* 2000 UT App 372,¶ 12 n. 6, 21 P.3d 231 ("The dissent's use of statutory construction to reach a different conclusion only supports our conclusion that the meaning of this statute is unclear and susceptible to several possible interpretations.").

¶ 11 We see a third possible interpretation. Here, the verb "is" is "used with the present participle of a verb to express a continuing action." *The American Heritage Dictionary* 163 (2d ed.1985); *see also State v. Redd,* 1999 UT 108,¶ 11, 992 P.2d 986 (stating, courts in Utah have a "long history of relying on dictionary definitions to determine plain meaning"). The word "is" may appear connected to "conducting business without [workers' compensation insurance]," which would require a continuing action of conducting business without workers' compensation insurance at the time of notice. Utah Code Ann. § 34A-2-211(2)(a)(ii) (Supp.2000). However, the phrase, "is conducting business," is connected in time to the Commission's belief. Section 34A-2-211(2)(a) allows the Commission to impose the penalty when the Commission *believes* that an employer ... is conducting business without securing [workers' compensation insurance]." *Id.* (emphasis added). Under this third interpretation, the Commission's ability to impose the penalty would attach once the Commission forms a belief that an employer is not complying with the Insurance Statute.[3]

¶ 12 In view of these three plausible interpretations, we conclude that the statute is ambiguous. Accordingly, we must analyze the statute in accordance with the rules of statutory construction to determine the intent of the Legislature.

---

**3.** The Commission's belief could arise upon receiving notification of noncompliance through information obtained by investigation, informers, or other means.

### B. The Requirements of the Insurance Statute

■ ¶ 13 Section 34A–2–211 allows the Commission to impose a penalty "if the [Commission] believes that an employer of one or more employees is conducting business without securing the payment of benefits in one of the three ways provided in [the Insurance Statute]." *Id.* Thus, an employer must be in full compliance with the Insurance Statute to avoid a penalty from the Commission. Accordingly, we must evaluate the requirements of the Insurance Statute to determine whether Anabasis was in full compliance.

■ ¶ 14 The Insurance Statute requires that an employer "secure the payment of workers' compensation" by "insuring, and keeping insured." [4] *Id.* § 34A–2–201(1). The requirement to insure and keep insured is mandatory for all employers in Utah. *See Industrial Comm'n v. Daly Mining Co.,* 51 Utah 602, 172 P. 301, 303–06 (1918). Further, the Insurance Statute "imposes an unconditional obligation on employers to be properly insured." *Thomas A. Paulsen Co. v. Industrial Comm'n,* 770 P.2d 125, 128 n. 4 (Utah 1989).

■ ¶ 15 Thus, the Insurance Statute sets forth two workers' compensation insurance requirements for employers. First, an employer must insure its employees with workers' compensation insurance. *See* Utah Code Ann. § 34A–2–201 (Supp.2000). An employer must comply with this requirement when it hires its first employee. *See Industrial Comm'n v. Evans,* 52 Utah 394, 174 P. 825, 826 (1918) ("The duty to secure in advance the compensation provided for by the act by one of the foregoing methods [of the Insurance Statute] has by this court been held to be compulsory."). Second, an employer must keep all its employees insured for workers' compensation. *See* Utah Code Ann. § 34A–2–201 (Supp.2000). "Keep" means "to cause to continue in a state, condition, or course of action." *The American Heritage Dictionary* 698 (2d ed.1985). Thus, this second requirement imposes an obligation on employers to provide workers' compensation insurance continually while they employ employees. If an employer allows workers' compensation insurance coverage to lapse at any time while it employs employees, the employer has violated the Insurance Statute and "is conducting business without securing the payment of benefits in one of the three ways provided in [the Insurance Statute]." Utah Code Ann. § 34A–2–211(2)(a)(ii) (Supp.2000). Consequently, even if the employer later resumes workers' compensation coverage, the employer has not kept insured for workers' compensation. Thus, notwithstanding an employer's purchase of retroactive workers' compensation insurance to cover a portion of its period of noncompliance, the portion without coverage remains as a period of the employer's noncompliance and the employer's violation continues.

### C. Harmonization With Other Provisions

■ ¶ 16 This interpretation of the Insurance Statute's requirements is in harmony with the provisions of section 34A–2–211 and other sections of the Workers' Compensation Act, Utah Code Ann. §§ 34A–2–101 to –803 (1997 & Supp.2000). *See V–1 Oil Co.,* 904 P.2d at 217 (stating that courts should harmonize provisions of an act with its purpose and intent if its application or meaning is uncertain); *Mesa Dev. Co. v. Sandy City,* 948 P.2d 366, 368–69 (Utah Ct.App.1997) (" '[W]e examine the entire statutory scheme and harmonize its provisions if possible.' " (Citation omitted.)). First, Section 34A–2–211(2)(b)(ii) instructs that the penalty should be calculated as a function of how much the employer should have paid in workers' compensation premiums "during the *period of noncompliance.*" Utah Code Ann. § 34A–2–211(2)(b)(ii) (Supp.2000) (emphasis added). A "period" is "[a]n interval of time characterized by the occurrence of certain conditions or events." *The American Heritage Dictionary* 922 (2d ed.1985). Thus, "period of noncompliance," as used in section 34A–2–211(2)(b)(ii), is a finite time period for which a penalty can be calculated. "Period of noncompliance" refers specifically to the time period beginning when an employer's work-

---

4. Employers remain liable for workers' compensation claims for up to six years from the date of an accident. *See* Utah Code Ann. § 34A–2–417(4)(a)(i) (Supp.2000).

ers' compensation insurance coverage lapses and ending when the employer again obtains the insurance coverage or is enjoined from further business operation.[5] *See* Utah Code Ann. § 34A–2–210(1)(b) (1997). Accordingly, the employer's period of noncompliance must be a specific past interval of time.

■ ¶ 17 Next, Utah Code Ann. § 34A–2–209 (1997), which details the criminal aspects of noncompliance, supports our interpretation. Section 34A–2–209 states that "[e]ach day's failure to comply with [the Insurance Statute] is a separate offense." *Id.* § 34A–2–209(1)(a)(ii). Thus, an employer cannot escape criminal liability for failing to secure workers' compensation insurance by purchasing a policy prior to an administrative proceeding. Any action an employer undertakes to purchase retroactive insurance does not reduce criminal liability, it merely stops the number of offenses from increasing. Section 34A–2–211 allows imposition of penalties for past noncompliance, just as section 34A–2–209 imposes criminal liability for past noncompliance, in spite of an employer's attempt to purchase retroactive workers' compensation insurance coverage prior to a proceeding.

¶ 18 Finally, Anabasis contends that this interpretation of "is"—which really is an interpretation of the phrase "if the [Commission] believes that an employer ... is conducting business without securing [workers' compensation insurance]," Utah Code Ann. § 34A–2–211(2)(b) (Supp.2000)—contradicts the meaning of an identical phrase in Utah Code Ann. § 34A–2–210(2) (1997). The alleged contradiction is a present and past verb tense interpretation for the same verb

form, "is." We are not convinced that our interpretation of section 34A–2–211 contradicts section 34A–2–210.

■ ¶ 19 " '[I]n cases of apparent conflict between provisions of the same statute, it is the Court's duty to harmonize and reconcile statutory provisions, since the Court cannot presume that the legislature intended to create a conflict.' " *Bennion v. Sundance Dev. Corp.*, 897 P.2d 1232, 1235 (Utah Ct.App. 1995) (citation omitted). Section 34A–2–210 contains the procedure for enjoining an employer from "further operation of the employer's business" if the Commission "has reason to believe that an employer is conducting a business without securing the payment of compensation in one of the three ways specified in [the Insurance Statute]." Utah Code Ann. § 34A–2–210(2) (1997). As we stated earlier, the Insurance Statute requires an employer to obtain workers' compensation insurance when it hires its first employee, and to maintain continual coverage during the time the employer has employees. *See* Utah Code Ann. § 34A–2–201 (Supp. 2000). Failure to comply with either of these requirements exposes the employer to the possibility that the Commission will enjoin the employer from conducting business until it fully complies with the Insurance Statute. *See* Utah Code Ann. § 34A–2–210 (1997). Thus, the application of our interpretation of the Insurance Statute and section 34A–2–211 does not contradict section 34A–2–210.

### D. Legislative History

¶ 20 The legislative history of amendments to section 34A–2–211 confirms that our inter-

---

5. We note that an employer's exposure to liability in a civil suit, as explained by section 34A–2–207, is limited to claims arising during the specific time period during which the employer does not have workers' compensation coverage. An employer's civil liability, as described in section 34A–2–207, ceases for claims that arise during the time period for which the employer has workers' compensation coverage. This limitation is evident in the language and history of section 34A–2–207.

First, section 34A–2–207 states that "[e]mployers who fail to comply with [the Insurance Statute] are not entitled to the benefits of this chapter or Chapter 3, Utah Occupational Disease Act, *during the period of noncompliance.*" Utah Code Ann. § 34A–2–207(1)(a) (Supp.2000) (emphasis

added). Thus, the Legislature limited an employer's liability to a specific time period. Further, Utah courts have stated that, "the [Workers' Compensation] Act has a correlated purpose in its benefit to the employer.... [If] it appears that the employer has complied with the act and provided *coverage* for [its] employees, [the employer] should be entitled to the protections from lawsuits and possible judgments it expressly grants him." *Buhler v. Gossner*, 530 P.2d 803, 805 (Utah 1975) (emphasis added). Thus, an employer is civilly liable, as described in section 34A–2–207, and loses listed defenses, only if the employer does not have workers' compensation insurance *coverage* for the time when a claim arises.

pretation is in accord with the Legislature's intent. *See State v. Garcia,* 965 P.2d 508, 512 (Utah Ct.App.1998) (stating, "[i]f the plain language is ambiguous, 'we may seek guidance from the legislative history' " (citation omitted)).

¶ 21 Prior to 1995, section 34A–2–211 contained a procedural hurdle that the Commission had to overcome before imposing a penalty on an employer. Section 34A–2–211 required that the Commission first "give an employer written notice of noncompliance" and allow the employer fifteen days to "remedy the default." Utah Code Ann. § 35–1–46.10(1) (1994) (amended 1995). "If the employer [did] not remedy the default within 15 days," the Commission then had to "issue an order to show cause why the employer should not be ordered to comply with [the Insurance Statute]." *Id.* § 35–1–46.10(2) (amended 1995). Finally, the Commission could impose a penalty "at the time of the hearing" to show cause. *Id.* § 35–1–46.10(4) (amended 1995).

¶ 22 The 1995 amendments to the Penalty Statute addressed the inefficiencies of this procedural hurdle. Senator Buhler, the co-sponsor of the bill, explained that the intent of the amendments to section 34A–2–211 was to "strike out against those employers who are not following the law and who are not providing the insurance that they are required to." Recording of Utah Senate Floor Proceedings (S.B.124), 51st Legislature, General Session (February 21, 1995) (statement of Sen. Buhler). Specifically, Senator Buhler addressed the problem of non-compliant businesses which create a revolving door by paying the relatively small fine when caught in non-compliance, complying by purchase of a short-term coverage policy, and then letting that policy lapse once the Commission had turned its attention elsewhere. Senator Buhler noted that "the Industrial Commission estimates that up to 10% of employers do not have the required coverage. Once they're caught, they obtain their coverage and the Industrial Commission can fine them … but it's usually a cost effective, although illegal way to do business." *Id.* Senator Buhler added,

> the problem that we're trying to solve is that there's 10% of our employers who do not have coverage, and they're supposed

to. They're told at the time that they register their corporation that they're supposed to have coverage … and so we're trying to get the point across that if you don't have coverage, there's a severe penalty.

*Id.*

¶ 23 The language was amended so that the imposition of a penalty was no longer tied to the hearing on the order to show cause. *Compare* Utah Code Ann. §§ 35–1–46.10(1) to –46.10(3) (1994) (amended 1995), *with* Utah Code Ann. §§ 35–1–46.10(1) to –46.10(2) (Supp.1995) (amended 1996). The new language stated, *"[i]n addition to the remedies specified in Subsection (1)* and Section 35–1–46, the commission may impose a penalty against the employer." Utah Code Ann. § 35–1–46.10(2)(a) (1995) (amended 1996) (emphasis added). This amendment signaled a break from the statutory procedure that gave rise to the revolving door problem explained by Senator Buhler.

¶ 24 A 1997 amendment reinforced the new policy by stating that *"[n]otwithstanding Subsection (1),* the division may impose a penalty against the employer." Utah Code Ann. § 34A–2–211(2)(a) (1997) (emphasis added) (current version at Utah Code Ann. § 34A–2–211(2)(a) (Supp.2000)). Further, the 1997 amendment to section 34A–2–211 added language that triggers the Commission's ability to impose penalties on employers: the Commission can impose a penalty when "the [Commission] believes an employer … is conducting business without securing the payment of benefits in one of the three ways provided in the [Insurance Statute]." *Id.* § 34A–2–211(2)(a)(ii) (current version at Utah Code Ann. § 34A–2–211(2)(a)(ii) (Supp.2000)).

¶ 25 Thus, our examination of the legislative intent reveals that the word "is" was not intended to impede the Commission's ability to impose a penalty on employers for past noncompliance with the Insurance Statute. As Senator Buhler indicated, the Legislature amended section 34A–2–211 to stop the revolving door through which employers evaded their responsibility to employees. The Legislature intended to allow the Commission to more effectively deter businesses

from noncompliance with the Insurance Statute. That ability to deter noncompliance rests in the Commission's power to impose penalties on businesses that fail to comply with the continuing requirement of the Insurance Statute.

¶ 26 The Legislature intended to preclude the statutory meaning which Anabasis has proposed. Anabasis's failure to understand the intent of the legislation is clear in its statement, "[t]he purpose of § 34A–2–211(2) is to obtain and maintain compliance *before a workers' compensation claim is made.* The best insurance is a policy in effect *when a claim is made.*" (Emphasis added.) Anabasis's proposal is misguided. The purpose of section 34A–2–211(2) is to ensure that employers comply with the Insurance Statute from the time they begin employing employees, not to ensure they comply only when a workers' compensation claim is imminent. Thus, the best and only insurance that qualifies under section 34A–2–211 is a policy in effect at all times when an employer employs employees. We conclude that retroactive insurance coverage for a portion of a period of noncompliance does not relieve Anabasis from the penalties imposed on it by the Commission. Accordingly, we affirm the Commission's ruling.

## II. Exercise of Discretion by the Commission

■■■ ¶ 27 Anabasis's assertion that the Commission abused its discretion by "not exercising discretion at all" is without merit. "[W]e review the agency's action for reasonableness." *Caporoz v. Labor Comm'n,* 945 P.2d 141, 143 (Utah Ct.App.1997).

¶ 28 Utah Code Ann. § 34A–2–211(2)(a) (Supp.2000) states that the Commission "*may* impose a penalty against the employer." *Id.* (emphasis added). The word "may" is the legislative grant of discretion to the Commission. The discretion granted to the Commission allows it to impose or not to impose a penalty. If the Commission imposes the penalty, "[t]he penalty imposed ... *shall* be the greater of: (i) $1,000; or (ii) three times the amount of the premium the

employer would have paid." *Id.* § 34A–2–211(2)(b) (emphasis added).

¶ 29 Here, the Commission's investigation found that Anabasis did not have workers' compensation insurance. Accordingly, the Commission had the discretion to impose or not to impose a penalty. *See id.* The Commission imposed the penalty for failure to comply with the Insurance Statute. The mandatory language of section 34A–2–211(2)(b) required the Commission to impose a minimum $1,000 penalty for the period of noncompliance.[6] Thus, we cannot say that the Commission's imposition of a penalty for noncompliance with the Insurance Statute was unreasonable.

## III. Attorney Fees

■■■ ¶ 30 Finally, Anabasis claims that it is entitled to an award of attorney fees from the State pursuant to the Small Business Access to Justice Act (the Act). Utah Code Ann. §§ 78–27a–1 to –6 (1996). The Act states that "a court may award reasonable litigation expenses to any small business which is a named party if the small business prevails in the appeal and the court finds that the state action was undertaken without substantial justification." *Id.* § 78–27a–5(1). We reject Anabasis's claim.

¶ 31 Utah Code Ann. § 78–27a–3(1) (1996), defines prevailing on appeal as "obtain[ing] favorable final judgment ... on the merits, on substantially all counts ... and with respect to the most significant issue or set of issues presented." Anabasis has not obtained a favorable judgment on any issue. Further, even if Anabasis had prevailed, the Commission had received information that Anabasis failed to provide workers' compensation insurance for its employees for up to six years. Subsequent investigation confirmed that the information was correct. Thus, the Commission had "substantial justification" for seeking a civil remedy to correct this problem. *Id.* § 78–27a–5(1). Accordingly, we conclude that Anabasis is not entitled to an award of attorney fees.

---

**6.** We note that the Commission only sought to impose the penalty for a short portion of the alleged six years of noncompliance. Had the Commission sought to impose a penalty for a longer period, the penalty could have been over $5,400.

## CONCLUSION

¶ 32 We conclude that Utah Code Ann. § 34A–2–211 empowers the Commission to impose a penalty on an employer for past periods of noncompliance if the Commission acquires information that the employer has not kept its employees insured for workers' compensation. Imposition of the penalty cannot be avoided by an employer's purchase of retroactive insurance coverage for a portion of its period of noncompliance. Next, we conclude that the Commission did not abuse its discretion by imposing the statutory minimum penalty on Anabasis. Finally, we conclude that Anabasis is not entitled to attorney fees under the Small Business Access to Justice Act.

¶ 33 We affirm.

¶ 34 WE CONCUR: RUSSELL W. BENCH, Judge, and JUDITH M. BILLINGS, Judge.