SEYMOUR v DALTON TOWNSHIP

Docket No. 99284. Submitted August 9, 1988, at Grand Rapids. Decided June 6, 1989.

The City of Muskegon operated a public golf course on land it owned in Dalton Township until operation of the course was turned over to David L. Seymour pursuant to an agreement between the city and Seymour. Prior to the agreement the property, being municipally owned, was exempt from ad valorem property taxation. Seymour, whose use of the tax-exempt municipally owned property in conjunction with a business conducted for profit made him subject to taxation as if he owned the property unless he qualified for one of the statutory exceptions to the lessee-user tax, applied for an exemption from taxation under the exception for property which is used as a concession at a public airport, park, market, or similar property and which is available for use by the general public. Dalton Township denied the exemption. Seymour and the city petitioned the Tax Tribunal for review. The Tax Tribunal entered a judgment against petitioners, ruling that the golf course operation does not fit within the concession exception to the lessee-user tax. Petitioners appealed.

The Court of Appeals *held:*

A concession is a privilege or space granted or leased for a particular use within specified premises. The concept of specific obligations on the part of the privileged party to maintain particular services at specified times is an incident of a concession. Here, petitioners' agreement does not amount to a concession. The agreement does little to impose obligations and restrictions upon Seymour stated with the requisite degree of specificity. Terms of an agreement characteristic of a concession, e.g., minimum hours, standards of service, or oversight of operations by the city, are conspicuously absent. Seymour had an unacceptable degree of discretion to run the golf course and

REFERENCES

Am Jur 2d, State and Local Taxation §§ 321, 339, 341, 348.

Comment Note: Availability of tax exemption to property held on lease from exempt owner. 54 ALR3d 402.

related facilities as he saw fit, without the imposition of obligations directed toward the fulfillment of a public purpose.
    Affirmed.

1. TAXATION — AD VALOREM PROPERTY TAXATION — LESSEES AND USERS OF TAX-EXEMPT PROPERTY — CONCESSIONS.
    When real property which is exempt from ad valorem property taxation is leased, loaned, or otherwise made available to and used by a private individual, association, or corporation in connection with a business conducted for profit, the lessee or user of such property, in the absence of an applicable statutory exception, shall be subject to taxation in the same amount and to the same extent as though the lessee or user were the owner of the real property; an exception applies where the property is used as a concession at a public airport, park, market, or similar property available for use by the general public (MCL 211.181[1] and [2][b]; MSA 7.7[5][1] and [2][b]).

2. TAXATION — AD VALOREM PROPERTY TAXATION — LESSEES AND USERS OF TAX-EXEMPT PROPERTY — CONCESSIONS.
    An individual who, by virtue of an agreement with a municipality, operates a golf course open to the public on property owned by the municipality does not come within the exception from taxation of lessees and users of tax-exempt property provided for concessions where the agreement gives the individual wide discretion in operating the golf course without the imposition of obligations directed toward the fulfillment of a public purpose, and the agreement lacks terms characteristic of a concession, e.g., minimum hours, standards of service, or oversight of operations by the municipality.

*Thomas J. O'Toole,* for City of Muskegon.

*Andrew Wierengo, III,* for David L. Seymour.

*Vander Ploeg, Ruck, Luyendyk & Wells,* and *Kim P. Kobza,* of Counsel, for Dalton Township.

Before: HOLBROOK, JR., P.J., and MURPHY and C. O. GRATHWOHL,* JJ.

HOLBROOK, JR., P.J. Petitioners appeal from the judgment of the Tax Tribunal determining that a

* Circuit judge, sitting on the Court of Appeals by assignment.

golf course owned by petitioner City of Muskegon and operated by petitioner David L. Seymour pursuant to a document entitled "Management and Concession Agreement" was not exempt from the lessee-user tax as a "concession" within the meaning of MCL 211.181(2)(b); MSA 7.7(5)(2)(b). We affirm.

The facts found by the hearing officer and adopted in their entirety by the Tax Tribunal are accepted by the parties for purposes of this appeal. The land subject to the agreement was acquired in 1969 by the City of Muskegon and opened to the public for use as a golf course in 1971. Because the golf course was owned and operated by the city, it was, under that state of affairs, exempt from ad valorem property taxation pursuant to MCL 211.7(m); MSA 7.7(4j). Because the city could not operate the golf course without sustaining financial losses, it decided to turn the course over to private management, and, to that end, it entered into its agreement with Seymour in 1983. The course thereafter remained open to the public.

The agreement granted Seymour, in exchange for stated amounts of compensation, the right of exclusive use, control, and operation of the golf course and related facilities, including a restaurant and bar. The agreement provided that the premises "may only be used by SEYMOUR for golf course and driving range purposes (including cross-country skiing during winter) and such other uses as are traditionally associated with those purposes and are consistent with the uses to which golf course real estate and related facilities are generally put." Any other use was contingent upon the permission of the city. Fees charged to the public could not exceed the highest fees charged by any of seven other public courses designated by the agreement. Seymour was responsible under the

agreement for keeping the course maintained "at an acceptable level and to an acceptable degree," determined in part by reference to past maintenance standards at the course and to standards in effect at the other designated golf courses. The parties indicated in the agreement their intent to structure the deal as a concession exempt from the lessee-user tax and further provided that Seymour would have the option of terminating the agreement if the anticipated exemption was not realized.

Appellate review of a decision of the Tax Tribunal includes a determination of whether the tribunal made an error of law or adopted a wrong principle. *Dowagiac Limited Dividend Housing Ass'n v City of Dowagiac,* 166 Mich App 232, 237; 420 NW2d 114 (1987), lv pending. Petitioners take no issue with the tribunal's factual findings.

Respondent township contends that Seymour is subject to the tax on lessees and users of public property provided by MCL 211.181(1); MSA 7.7(5)(1):

> When any real property which for any reason is exempt from ad valorem property taxation is leased, loaned, or otherwise made available to and used by a private individual, association, or corporation in connection with a business conducted for profit, the lessees or users of this real property shall be subject to taxation in the same amount and to the same extent as though the lessee or user were the owner of this real property.[1]

Petitioners rely on the exemption for concessions:

> Subsection (1) shall not apply to:

---

[1] Quoted in its present form, MCL 211.181; MSA 7.7(5) reflects amendments since the events giving rise to this appeal, but which are not material to the issues governing this appeal.

\* \* \*

Property which is used as a concession at a public airport, park, market, or similar property and which is available for use by the general public. [MCL 211.181(2)(b); MSA 7.7(5)(2)(b).]

Since petitioners raise an issue of a statutory exemption from taxation, it is our task to strictly construe the exemption against the taxpayer and in favor of the taxing authority. *Ladies Literary Club v Grand Rapids,* 409 Mich 748, 753; 298 NW2d 422 (1980). "Since taxation is the rule and exemption the exception, the intention to make an exemption must be expressed in clear and unambiguous terms." *Nomads, Inc v City of Romulus,* 154 Mich App 46, 55; 397 NW2d 210 (1986), lv den 428 Mich 865 (1987). This does not mean, however, that legislative intent to grant an exemption may be thwarted by a strained judicial construction. *St Paul Lutheran Church v City of Riverview,* 165 Mich App 155, 158; 418 NW2d 412 (1987), lv den 430 Mich 890 (1988). With these general principles in mind, we approach the task of determining whether Seymour's use of the property falls within the contours of a concession.

In *Detroit v Tygard,* 381 Mich 271; 161 NW2d 1 (1968), the Court held that a business operating on premises leased from an airport and which were used for giving flying lessons and for leasing, storage, and maintenance of aircraft did not satisfy the "concession" exemption under the similarly worded statute in force at that time. In so holding, the Court delineated, apparently for the first time, the meaning of a concession and some characteristics of a concession that are pertinent to this case:

We look first to a dictionary definition of "concession":

"A privilege or space granted or leased for a particular use within specified premises."

\* \* \*

Next, we believe the concept of specific obligations on the part of the privileged party to maintain particular services at specified times is an incident of a concession. We find no such obligations imposed by the agreement here under consideration. No minimum hours during which the services offered must be made available to the public are required. No standards of service are mandated. Of course, the services offered must bear a reasonable relationship to the purposes of a public airport. That element in part is present here, particularly the storage and servicing of aircraft. [381 Mich 275-276.]

In *Kent Co v Grand Rapids,* 381 Mich 640; 167 NW2d 287 (1969), the Court held that rights granted by an airport to use premises for a motel and restaurant business and by the same airport to another operator for a business similar to that at issue in *Tygard* were exempted as concessions. Although the legal rationale for these holdings is elusive, the Court apparently distinguished *Tygard* on the basis of the specific obligations under specific terms and standards imposed on the concessionaires in *Kent Co v Grand Rapids* to offer services deemed necessary to the operation of the airport. The Court did indicate that each fact situation required its own analysis. *Id.,* 652. It further indicated that a concession could be granted by a lease or by other form of agreement. *Id.,* 650-651, 652-653.

The legal criteria supplied by reported decisions supplies minimal guidance. Unlike this case, reported decisions arise only in the context of concessions granted by airports. However, we conclude, based on the foregoing, that the agreement

in this case does not amount to a concession. The agreement does little to impose obligations and restrictions upon Seymour stated with the requisite degree of specificity. Terms of an agreement characteristic of a concession, e.g., minimum hours, standards of service, or oversight of operations by the city, are conspicuously absent. Oversight of fees charged to the public is not strenuous; all that is required is that the fees will not exceed the upper end of that range of fees charged by competitors. The maintenance requirement is consistent with the city's interest in protecting its reversion after the termination of the agreement and does not appear to be directed toward exacting some specific term or service for the public benefit. Seymour had an unacceptable degree of discretion to run the golf course and related facilities as he saw fit, without the imposition of obligations directed toward the fulfillment of a public purpose.

We find ourselves in agreement with the conclusion of the hearing officer incorporated by the Tax Tribunal:

> [T]he notion of a "concession" . . . is . . . that of a *subsidiary* business related to a public-oriented operation . . . . [A holding to the contrary that] would allow for a self-contained public entity . . . leased to the private sector to qualify as a concession . . . would give carte blanche to a governmental unit to lease out, for profit, one of any number of governmental enterprises and, with minimal restrictions on its operation, gain for it a favored tax status by simply denominating it a "concession."

Although the cases discussed earlier did not need to reach the question of whether a concession need be incidental to and subsumed by the larger public purpose of the granting governmental en-

tity, our conclusion in the affirmative is supported by a close reading of *Tygard, supra.* A concession is there defined as a "privilege or space granted or leased for a particular purpose *within* specific premises." *Id.,* 275 (emphasis added). The concessionaire must be obligated to offer services that "bear a reasonable relationship to the purposes" of the granting entity. *Id.,* 276. If that entity simply privatizes its entire operation, as the city did here, exemption from taxation would be at odds with the broader purpose of the lessee-user tax, which is to eliminate the unfair advantage that private-sector users of tax-exempt property would otherwise wield over their competitors leasing privately owned property. See *Detroit v National Exposition Co,* 142 Mich App 539, 546; 370 NW2d 397 (1985), lv den 423 Mich 862 (1985); *Nomads, Inc, supra,* p 53.

In light of the policy concerns stated here, the guidance of the Supreme Court regarding the meaning of the term "concession," and the principle of strict construction, we conclude that petitioners have failed to establish their entitlement to an exemption.

Affirmed.