2004 UT App 472

**SALT LAKE COUNTY BOARD OF EQUALIZATION, State of Utah, Plaintiff and Appellant,**

v.

**TAX COMMISSION; and Rio, Inc. dba Rio Grande Café, Defendants and Appellees.**

**No. 20040028–CA.**

Court of Appeals of Utah.

Dec. 23, 2004.

Mary Ellen Sloan and Jason Rose, Salt Lake City, for Appellant.

Mark L. Shurtleff, atty. gen., Timothy A. Bodily, asst. atty. gen., and John W. Call, Nygaard Coke & Vincent, Salt Lake City, for Appellees.

Before BILLINGS, P.J., DAVIS and ORME, JJ.

## OPINION

BILLINGS, Presiding Judge:

¶ 1 The Salt Lake County Board of Equalization (the Board) appeals the district court's granting of summary judgment to Rio, Inc. dba Rio Grande Café (Rio), which upheld the Utah State Tax Commission's the (Tax Commission decision) (1) granting a privilege tax exemption to Rio, see Utah Code Ann. § 59–4–101 (1995), and (2) denying the Board's assessment of an escaped property tax on Rio, see Utah Code Ann. § 59–2–309(1) (1995). Rio cross-appeals the district court's denial of litigation expenses under the Small Business Equal Access to Justice Act (the Small Business Act). See Utah Code Ann. §§ 78–27a–1 to –6 (2003). We affirm.

## BACKGROUND

¶ 2 In 1978, the State of Utah purchased the Denver and Rio Grande Depot (the Depot) from the Salt Lake City Union Depot and Railroad Company. As property of the State, it is exempt from property tax under article XIII, section 2 of the Utah Constitution.

¶ 3 In 1981, the State entered into a lease with Rio's predecessor-in-interest for the purpose of opening a restaurant (the Café) within a portion of the Depot. In 1987, the State approved assignment of the lease to Rio to continue operating the Café. The Utah Historical Museum (the Museum), Amtrak, and the Café occupied portions of the Depot during the relevant period. The Café and the Museum share restroom facilities.

¶ 4 The original lease has been renewed several times and remains in effect today. The lease provides that "the State is desirous of having a restaurant/cafeteria operated at said location for the convenience of employees, visitors, and the general public of the State." While the lease does not contain a specific requirement as to the Café's hours of operation, it does contain provisions regarding Rio's obligation to (1) provide food services to the Café's customers promptly and efficiently, (2) produce accounting records for examination upon request by the State, (3) obtain the State's approval of plans for renovations and alterations, (4) rehabilitate the premises upon the lease's expiration, and (5) conform to the State's requests regarding energy and water conservation.

¶ 5 During the relevant time period, the Café was generally open from 11:00 a.m. to 2:30 p.m. and 5:00 p.m. to 10:00 p.m., Monday through Friday; from 11:30 a.m. to 2:30 p.m. and 5:00 p.m. to 10:00 p.m. on Saturday; and from 4:00 p.m. to 9:00 p.m. on Sunday. The district court found that these hours fluctuate slightly, depending on the season.[1] The Museum was open to the public Monday through Friday, 8:00 a.m. to 5:00 p.m. and on Saturday from 10:00 a.m. to 3:00 p.m. Amtrak

---

1. The Board argues that the district court's findings of fact regarding the Café's hours of operation are inconsistent with the stipulated statement of facts entered into by the parties. However, the only time period in dispute is the Saturday lunch hour. Whether the Café is open on Saturday from 11:30 a.m. to 2:30 p.m. is not determinative of our outcome. Therefore, we disregard the Board's assertion.

trains arrived twice daily at 12:01 a.m. and 4:40 a.m. and departed from the station within forty minutes of arriving. The Amtrak train schedule indicated that the only food available at its Salt Lake City location was from vending machines.

¶ 6 From 1978 to 1995, the Salt Lake County Assessor (the County) listed the entire State-owned parcel, including the Café, as exempt property under parcel # 15–01–178–033–000. However, in 1995, the County assessed the Café separately under parcel # 15–01–178–033–6001 for the purpose of assessing a privilege tax and an escaped property tax against Rio pursuant to Utah Code sections 59–4–101 and 59–2–309, respectively. *See* Utah Code Ann. §§ 59–4–101, 59–2–309 (1995).

¶ 7 Rio appealed the assessments to the Board, which upheld the privilege tax assessment in the amount of $3894.40 and the escaped property tax assessment in the amount of $6823.08. Rio then appealed that decision to the Tax Commission. After hearings, the Tax Commission determined that Rio's lease and use of the Depot entitled it to the concession exemption to the privilege tax. *See id.* § 59–4–101(3)(a).

¶ 8 The Board appealed the Tax Commission's decision by filing a Petition for Review in district court. After the court dismissed its constitutional claim,[2] the Board filed a motion for summary judgment asking the district court to uphold its privilege tax and escaped property tax assessments. Rio filed a cross-motion for summary judgment seeking to uphold the Tax Commission's decision.

¶ 9 The district court affirmed the Tax Commission's decision and determined that the Café was a concession under the statute and thus exempt from the privilege tax. *See id.* The court also determined that because Rio was exempt from the privilege tax, the Board's escaped property tax assessment argument was moot. *See id.* § 59–2–309(1).

After the district court entered its decision, Rio moved for an award of litigation expenses under the Small Business Act. *See id.* §§ 78–27a–1 to –6. The district court denied Rio's motion, ruling that the Board did not arbitrarily interpret the privilege tax statute to Rio's detriment and, therefore, the Board's appeal was not without substantial justification. The Board appeals and Rio cross-appeals.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 10 The Board argues that the district court erred by granting summary judgment to Rio, holding that it qualifies for the concession exemption to the privilege tax, and accordingly, it is not subject to an escaped property tax assessment. Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Utah R. Civ. P. 56(c). "Because a challenge to summary judgment presents for review only questions of law, we accord no deference to the trial court's conclusions but review them for correctness." *Crossroads Plaza Ass'n v. Pratt*, 912 P.2d 961, 964 (Utah 1996) (quotations and citations omitted).

■ ¶ 11 On cross-appeal, Rio argues that the district court erred by denying its motion for an award of litigation expenses under the Small Business Act because the Board's action was "without substantial justification." Utah Code Ann. § 78–27a–4 (2003). Whether Rio is entitled to litigation expenses under the Small Business Act is a question of law reviewed for correctness. *See V–1 Oil Co. v. Utah State Tax Comm'n*, 942 P.2d 906, 915 (Utah 1996).

## ANALYSIS

### I. Privilege Tax

■ ¶ 12 The Board argues that Rio is not entitled to the concession exemption to the

2. The Board argued that the concession exemption statute is unconstitutional. Upon Rio's motion, the district court dismissed the constitutional claim, ruling that because the Board had failed to bring this issue before the Tax Commission, the Board waived it. *See Nebeker v. Utah State Tax Comm'n*, 2001 UT 74, ¶ 18, 34 P.3d 180 (holding that "the district court could not have heard the constitutional claims because Nebeker failed to raise these claims in his initial proceeding before the Tax Commission[, and as such has] waived any opportunity to bring it later either before the district court or in another forum"). The Board does not appeal the dismissal of its constitutional claim.

privilege tax because it is not a concession within the meaning of the statute. *See* Utah Code Ann. § 59–4–101(3)(a) (1995). The statute provides that a privilege "tax is not imposed [on] ... the use of property which is a concession in, or relative to, the use of a public airport, park, fairground, or similar property which is available as a matter of right to the use of the general public." *Id.*

█ ¶ 13 To fall within the concession exemption to the privilege tax statute, three statutory criteria must be met:

First, the property in question must be of the type that ordinarily is exempt from taxation. Second, the property must be used by a private individual, association, or corporation in connection with a for-profit business. Third, the business entity must be a concessionaire at one of the listed public facilities.

*Interwest Aviation v. County Bd. of Equalization,* 743 P.2d 1222, 1224 (Utah 1987) (discussing the identical language of the predecessor privilege tax exemption statute). The parties agree that the first two criteria are met: the Depot is otherwise exempt from taxes as property of the State, *see* Utah Const. art. XIII, § 2, and the Café is a for-profit business. Thus, we must only determine whether Rio is a "concession in, or relative to, the use of a public airport, park, fairground, or similar property" within the meaning of the statute. Utah Code Ann. § 59–4–101(3)(a).

¶ 14 There is no statutory definition of the term "concession" nor is there any definition of the term in the rules adopted by the Tax Commission. Furthermore, no Utah case has specifically defined the term and only one Utah case has addressed the concession exemption to the privilege tax; however, it does not provide us guidance in defining the term. *See Interwest Aviation,* 743 P.2d at 1224 (assuming, for purposes of that case, that the plaintiffs were concessionaires at a public airport).

¶ 15 In determining whether Rio qualifies for the concession exemption, we follow well settled rules of statutory construction:

First, we construe statutes that grant exclusions from taxation strictly against the party seeking an exemption, and that party accordingly bears the burden of proving that it qualifies for the exemption sought. Second, in construing any statute, "we first examine the statute's plain language and resort to other methods of statutory interpretation only if the language is ambiguous.". Accordingly, we read the words of a statute literally unless such a reading is unreasonably confused or inoperable, and give the words their usual and accepted meaning. Third, the reviewing court does not look beyond the plain and unambiguous language to ascertain legislative intent. Finally, we presume that the "statute is valid and that the words and phrases used were chosen carefully and advisedly."

*Gull Labs., Inc. v. Utah State Tax Comm'n,* 936 P.2d 1082, 1084 (Utah Ct.App.1997) (quoting *US Xpress, Inc. v. Utah State Tax Comm'n,* 886 P.2d 1115, 1117 (Utah Ct.App. 1994)).

█ ¶ 16 Both the Tax Commission and the district court relied on two dictionary definitions for the term "concession." One dictionary defines "concession" as "a grant of land or property especially by a government in return for services or for a particular use," Webster's Ninth New Collegiate Dictionary (1985), and another defines "concession" as "something, such as a land tract or franchise, granted by a government or controlling authority to be used for a specific purpose." The American Heritage Dictionary, Second College Edition (1982). Black's Law Dictionary similarly defines "concession" as "[a] grant, ordinarily applied to the grant of specific privileges by a government." Black's Law Dictionary 289 (6th ed.1990). We agree with the district court and the Tax Commission that the plain meaning of the term "concession" is a grant of property or a franchise by a government entity to be used for a specific purpose.

¶ 17 Rio's lease agreement specifically provides that "the State is desirous of having a restaurant/cafeteria operated at [the Depot] for the convenience of employees, visitors, and the general public of the State." The Café is available to patrons of the Depot, including the Museum and Amtrak, as well as the general public. Therefore, the Café is

a concession under the plain meaning of the statute because the State granted Rio property to be used for a specific purpose: the operation of a restaurant/cafeteria in the Depot for employees, visitors, and the general public.[3]

¶ 18 The Board urges us to adopt the reasoning of the Michigan courts in interpreting the meaning of "concession" within the privilege tax exemption statute. Specifically, the Board requests that before we permit a party to qualify for the concession exemption, we require that it have "specific obligations" within the lease agreement including minimum hours of operation, standards of service, oversight of operations by the government entity, and oversight of fees charged to the public. *Seymour v. Dalton Township*, 177 Mich.App. 403, 442 N.W.2d 655, 657 (1989); *see Detroit v. Tygard*, 381 Mich. 271, 161 N.W.2d 1, 3 (1968). There is nothing in the plain language of the concession exemption statute that compels this result nor is the language of the statute ambiguous. The Michigan Supreme Court stated that "the concept of specific obligations on the part of the privileged party to maintain particular services *at specified times* is an incident of a concession." *Tygard*, 161 N.W.2d at 3 (emphasis added). However, the court did not provide any reasoning for

mandating specific hours of operation,[4] and we refuse to read that requirement into our privilege tax exemption statute without some justification for it.[5]

¶ 19 In addition, as the Tax Commission found, the Café is open during the hours in which people typically eat. Many of those hours coincide with the Museum's hours. Thus, visitors to the Museum could choose to eat lunch at the Café either before or after visiting the Museum or to eat dinner at the Café after visiting the Museum. Arguably, if the Café were not open during *any* of the hours in which the Depot, including the Museum and Amtrak, is open, the Café may not qualify as a "concession in, or relative to" the use of the Depot. However, that is not the situation in this case.

¶ 20 Thus, Rio has met its "burden of proving that it qualifies for the [privilege tax] exemption." *Gull Labs., Inc. v. Utah State Tax Comm'n*, 936 P.2d 1082, 1085 (Utah Ct.App.1997) (quotations and citations omitted). Accordingly, we hold that the Café is a "concession in, or relative to, the use of" the Depot, "which is available as a matter of right to the use of the general public." Utah Code Ann. § 59–4–101(3)(a) (1995). We affirm the ruling of the district court.[6]

3. The Board asserts that the Café is not "in, or relative to, the use of" the Museum or Amtrak, which are the relevant properties "available as a matter of right to the use of the general public." Utah Code Ann. § 59–4–101(3)(a) (1995). However, it is the Depot building itself (which contains the Museum, Amtrak, and the Café) that is the relevant property "available as a matter of right to the use of the general public." *Id.*

4. While the lease in this case does not contain specific obligations regarding hours of operation, it does require other specific obligations, namely that food services must be provided to customers promptly and efficiently, accounting records must be maintained for examination by the State, the State must approve any plans for renovations or alterations, Rio must rehabilitate the premises upon the expiration of the lease, and Rio must conform to the State's requests regarding energy and water conservation.

5. The Board urges us to adopt the stricter "specific obligations" definition of concession of the Michigan Supreme Court, *Detroit v. Tygard*, 381 Mich. 271, 161 N.W.2d 1, 3 (1968), because in construing a statute which grants an exclusion

from taxation, we must interpret it strictly against the party seeking the exemption, *see Gull Labs., Inc. v. Utah State Tax Comm'n*, 936 P.2d 1082, 1085 (Utah Ct.App.1997). However, the Board has not provided us with a compelling reason to do so. In fact, the Michigan Supreme Court relied upon a dictionary definition that actually comports with the dictionary definitions upon which we rely: "'A privilege or space granted or leased for a particular use within specified premises.'" *Tygard*, 161 N.W.2d at 3 (citation omitted). The Michigan Supreme Court then imposed its stricter "specific obligations" mandate to its definition of concession without explanation of its departure from the dictionary definition it cited. *Id.* at 7–8. We decline to follow its lead. Accordingly, we rely upon the plain meaning of concession as a grant of property or a franchise by a government entity to be used for a specific purpose.

6. We do not need to reach the escaped property tax issue. Because we conclude that Rio qualifies for the concession exemption, Rio is not subject to escaped property tax under Utah Code section 59–2–309(1). *See* Utah Code Ann. § 59–2–309(1) (1995) (requiring that "[a]ny escaped

## II. Litigation Expenses

■ ¶ 21 Rio argues that the trial court erred by refusing to award it litigation expenses under the Small Business Act. *See* Utah Code Ann. §§ 78–27a–1 to –6 (2003). Specifically, Rio asserts that the district court erred by (1). determining that the Board's action in pursuing an appeal of the Tax Commission's decision was not "without substantial justification," and (2) failing to determine whether the Board's constitutional claim dismissed by the court lacked "substantial justification." *Id.* §§ 78–27a–4, –5(1).

¶ 22 The purpose of the Small Business Act is to allow small businesses to "recover reasonable litigation expenses" incurred in "seeking review of or defending against substantially unjustified government action." *Id.* § 78–27a–2. In either a civil action or an appeal from an administrative decision commenced by the State, which "involves the business regulatory function of the state, a court may award reasonable litigation expenses to any small business" named as a party in the action if that party prevails and the court finds that the action taken by the State was "without substantial justification." *Id.* §§ 78–27a –4, –5(1). Thus, we must determine whether the assessment of the privilege tax against Rio involved a business regulatory function and, if so, whether the Board acted without substantial justification in pursuing its appeal of the Tax Commission decision.[7]

¶ 23 While no Utah cases have directly addressed the issue of what constitutes a "business regulatory function" under the Small Business Act,[8] nor does the Small Business Act define "business regulatory function," Utah Code Ann. §§ 78–27a–4, – 5(a), Utah cases have generally distinguished the. government's taxing powers from its regulatory powers. *See, e.g., Consolidation Coal Co. v. Emery County,* 702 P.2d 121, 124 (Utah 1985) (stating that a county may impose a license primarily as a means of regulating businesses, as an exercise of its police power, or it may license to raise revenue, as an exercise of its taxing power); *Weber Basin Home Builders Ass'n v. Roy City,* 26 Utah 2d 215, 487 P.2d 866, 867 (1971) (stating that money collected to service, regulate, or police activity is a fee; whereas money collected for general revenue purposes is a tax); *Davis v. Ogden City,* 117 Utah 315, 215 P.2d 616, 622 (1950) (noting that a license fee is based upon the a government's police power to regulate and a tax is intended to raise revenue). Thus, we must determine whether the purpose of the privilege tax is to regulate businesses or to raise revenue for general governmental purposes.

■ ¶ 24 The privilege tax statute states that "[t]he tax imposed … is the same amount that the ad valorem property tax would be if the possessor or user were the owner of the property." Utah Code Ann. § 59–4–101(2). The privilege tax statute further states that the tax is "assessed to the possessors or users of the property on the same forms, and collected and distributed at the same time and in the same manner, as taxes assessed owners, possessors, or other

property may be assessed by the original assessing authority at any time as far back as five years prior to the time of discovery").

7. The district court did not address whether the privilege tax constitutes a business regulatory function and dismissed Rio's motion for litigation expenses on the substantial justification prong.

8. In fact, only two Utah cases have addressed the Small Business Act. In *Anabasis, Inc. v. Labor Commission,* 2001 UT App 239, 30 P.3d 1236, we held that the petitioner did not prevail on any issue, and even if it did prevail, the Labor Commission had substantial justification for imposing a penalty for operating a business without obtaining workers' compensation coverage. *See id.* at ¶ 31. In *V–1 Oil, Co. v. Utah State Tax Commission,* 942 P.2d 906 (Utah 1996), the Utah Supreme Court also held that the State did not act without substantial justification in imposing an environmental surcharge even though the court originally held the surcharge to be an unconstitutional tax. *See id.* at 915. Rio urges us to hold that because the *V–1 Oil* court did not address the business regulatory function requirement, that the court considered the requirement automatically met. However, the court did not need to reach the issue of what constitutes a business regulatory function under the Small Business Act because (1) there was no evidence that V–1 Oil was a small business and (2) the State was not without substantial justification in imposing the tax. *See id.* Furthermore, upon rehearing, the court vacated its prior decision and held that the surcharge is in fact a valid, constitutional fee. *See id.* at 918.

claimants of property which is subject to ad valorem property taxation." *Id.* § 59–4–101(4). In addition, the record demonstrates that the purpose of the privilege tax is to raise revenue for the County's general fund and that the revenue is distributed in the same manner as property taxes. There is no evidence that its purpose is to regulate for-profit businesses, as Rio contends. Therefore, we hold that the assessment of the privilege tax does not involve a "business regulatory function" under the Small Business Act.[9] *Id.* §§ 78–27a–4, –5(1). Accordingly, we affirm.

## CONCLUSION

¶ 25 We affirm the district court's rulings (1) upholding the Tax Commission's decision granting a privilege tax exemption to Rio and (2) denying Rio litigation expenses under the Small Business Act.

¶ 26 WE CONCUR: JAMES Z. DAVIS and GREGORY K. ORME, Judges.

---

9. Because we conclude that the assessment of the privilege tax does not constitute a "business regulatory function" under the Small Business Act, Utah Code Ann. §§ 78–27a–1 to –6 (2003), we need not decide whether the Board was without substantial justification in pursuing its appeal.