*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NORTHPORT CREEK GOLF COURSE LLC,

Petitioner-Appellant,

v

TOWNSHIP OF LEELANAU,

Respondent-Appellee.

UNPUBLISHED
May 30, 2019

No. 337374
Tax Tribunal
LC No. 15-002908-TT

ON REMAND

Before: SWARTZLE, P.J., and SAWYER and MARKEY, JJ.

PER CURIAM.

This matter is again before us following a remand to the Tax Tribunal. We now affirm.

In our original opinion, we reversed the determination of the Tax Tribunal that petitioner was responsible for the payment of tax under the lessee-user statute, MCL 211.181. *Northport Creek Golf Course LLC v Leelanau*, unpublished opinion of the Court of Appeals (No. 337374, issued 11/28/2017). Specifically, we concluded as follows:

> In sum, we conclude that a governmental entity may contract with a private, for-profit business to manage property owned by the governmental entity without the private business necessarily becoming a "user" under MCL 211.181. Because neither respondent nor the tax tribunal has presented any analysis that petitioner is a "user" under MCL 211.181 beyond petitioner's being a for-profit business, the tax tribunal erred in denying summary disposition to petitioner. Petitioner was entitled to summary disposition and an order from the tax tribunal directing respondent to recognize that exemption under MCL 211.7m and recognizing that petitioner is not subject to tax under MCL 211.181. [*Slip op* at 4.]

-1-

Thereafter, the Supreme Court reversed, concluding that we should have remanded the matter to the Tax Tribunal to determine whether petitioner did use the golf course in connection with a for-profit business, directing us to remand the matter to the Tax Tribunal for that determination. *Northport Creek Golf Course LLC v Leelanau*, 503 Mich 881; 918 NW2d 809 (2018). We now review the matter following that remand.

Our review of the Tax Tribunal's decision was summarized by *Skybolt Partnership v City of Flint*, 205 Mich App 597, 600; 517 NW2d 838 (1994) as follows:

> In the absence of fraud, this Court's review of Tax Tribunal decisions is limited to whether the Tax Tribunal made an error of law or adopted an improper legal principle. *Gillette Co v Dep't of Treasury,* 198 Mich App 303, 306; 497 NW2d 595 (1993); *Dow Chemical Co v Dep't of Treasury,* 185 Mich App 458, 462–463; 462 NW2d 765 (1990). Additionally, this Court "accept[s] the factual findings of the tribunal as final, provided they are supported by competent, material, and substantial evidence." *Id.*

*Skybolt*, 205 Mich App at 601, also observed that the "lessee-user tax is intended to ensure that lessees of tax-exempt property will not receive an unfair advantage over lessees of privately owned property."

After reviewing the dictionary definitions of "use" and "user", the Tax Tribunal concluded that petitioner falls within those definitions. We are concerned that the Tax Tribunal may have taken a somewhat broad view of "use" of the property. That view might, in other circumstances, ensnare property management companies in the manner that we warned against in our original opinion. Nevertheless, we find the following conclusion by the Tax Tribunal to be persuasive:

> The Tribunal finds that these definitions of users or use are consistent with NCGC's operations at the subject property. Mr. Collins, the sole Member of Northport Creek, LLC, the owner of the subject golf course before its donation to the Village of Northport, purchased the land, constructed and ran the for-profit course, and paid property taxes to Leelanau Township and the Village of Northport. On the same day of its donation, Mr. Collins, sole Member of NCGC, signed a Management Agreement with the Village. NCGC was not paid a fee for its management services but was given 95% of the gross revenue from the course.

Ultimately, petitioner presents little argument that it is not a "user" under the statute beyond the fact that the golf course has consistently operated at a loss. But we already rejected that argument in our previous opinion. *Slip op* at 3. Moreover, as the Tax Tribunal found, "Mr. Collins reported all profit and losses from NCGC and several other LLCs on his personal income tax return, and in 2014 and 2015, offset profits with losses, and personally made money." This reinforces the Tribunal's conclusion that petitioner operated the golf course as a business, rather than operating a property management business that provided such services to the village in operating the village's golf course.

Accordingly, we are not persuaded that the Tax Tribunal erred in determining that, under the structure established by the agreement in this case, this is not a case of petitioner operating a management company managing a golf course, but using the Village's property to operate a golf course company.

This conclusion necessitates that we address a question that we found unnecessary to address in our original opinion, whether the "concession exemption" to the lessee-user tax applies. *Skybolt*, 205 Mich App at 602, set forth the standard in analyzing the applicability of a tax exemption:

> Tax exemptions are strictly construed against the taxpayer and in favor of the taxing authority. *Ladies Literary Club v Grand Rapids,* 409 Mich 748, 753; 298 NW2d 422 (1980). Because taxation is the rule and exemption the exception, the intention to make an exemption must be expressed in clear and unambiguous terms. *Nomads, Inc v Romulus,* 154 Mich App 46, 55; 397 NW2d 210 (1986). The Legislature is presumed to have intended the meaning it plainly expressed. *Guardian Industries Corp v Dep't of Treasury,* 198 Mich App 363, 381; 499 NW2d 349 (1993). If the meaning of the statutory language is clear, judicial construction is normally neither necessary nor permitted. *Id.* Every phrase, clause, and word in a statute must be given effect, if possible. *Jenkins v Great Lakes Steel Corp,* 200 Mich App 202, 209; 503 NW2d 668 (1993).

> Applying these principles to the plain language of the concession exemption provided in MCL § 211.181(2)(b); MSA § 7.7(5)(2)(b) as presently written, it is apparent that in order for the exemption to apply, two requirements must be satisfied: (1) the property must be used as a concession, and (2) it must be available for use by the general public. The Legislature's use of the conjunctive "and" in subsection 2(b) must be given effect and indicates that both of these conditions must be satisfied before the exemption will apply. Further, requiring the two conditions to be satisfied is consistent both with the purpose of the user-lessee statute and with tax exemption statutes in that it favors the taxing authority and discourages unfair advantage over lessees of private property. *Nat'l Exposition, supra; Nomads, Inc, supra.*

In arguing that the concession exemption applies, petitioner relies solely on our decision in *Kalamazoo v Richland Twp*, 221 Mich App 531; 562 NW2d 237 (1997). In that case, the City of Kalamazoo owned land in Richland Township upon which a golf course was operated by the Kalamazoo Municipal Golf Association (KMGA) under a management agreement with the city. This Court, in addition to concluding that the lesser-user statute did not apply, also concluded that, even if the statute did apply, so did the concession exemption:

> Here, it is not disputed that the management agreements required the KMGA to provide open golf to the general public.

> In addition, Eastern Hills was used as a concession. The Michigan Supreme Court has defined a "concession" as a " 'privilege or space granted or

leased for a particular use within specified premises.' " *Kent Co v Grand Rapids,* 381 Mich 640, 651; 167 NW2d 287 (1969), quoting *Detroit v Tygard,* 381 Mich 271, 275; 161 NW2d 1 (1968). Incident to a concession is the concept of specific obligations on the part of the privileged party to maintain particular services at specified times. *Tygard, supra,* p 275. These obligations of the concessionaire must "bear a reasonable relationship to the purposes of" the granting entity. *Id.,* p 276; *Seymour v Dalton Twp,* 177 Mich App 403, 410; 442 NW2d 655 (1989). Here, there is no question that the KMGA was granted particular privileges within specified premises.

In addition to the privileges that it received under the management agreements, the KMGA also undertook specific obligations. As the MTT correctly noted, the agreements required the KMGA to provide to the general public open golf, league, and tournaments at reasonable times, to operate food and golf-equipment concessions, and to maintain the golf course to a specified standard. In addition, as stated earlier during our discussion of the standing issue, the agreements provided Kalamazoo with extensive oversight of the KMGA's operation of Eastern Hills. The specificity of the management agreements satisfied the requirement of specific obligations to maintain particular services at specified times. See *Kent Co, supra,* pp 646–648, 652–653; compare *Tygard, supra,* pp 275–276; *Golf Concepts [v City of Rochester Hills,* 217 Mich App 21, 29; 550 NW2d 802 (1996)]; *Seymour, supra*, pp 408–409.

Finally, the obligations of the KMGA were reasonably related to public purposes. The broader purpose of the lessee-user tax is to eliminate the unfair advantage that private-sector users of tax-exempt property would otherwise wield over their competitors leasing privately owned property. *Seymour, supra*, pp 410. Merely privatizing the operation of a golf course is contrary to this purpose. *Golf Concepts, supra,* pp 29; *Seymour, supra,* pp 410. Here, in contrast to those cases, Kalamazoo did not simply privatize the operation of Eastern Hills. Rather, it entered into a contract with the KMGA that granted Kalamazoo extensive oversight in order to protect the public purpose of providing the general public a recreational opportunity to play golf. Accordingly, the MTT's finding that the KMGA used Eastern Hills as a concession for purposes of the lessee-user statute was supported by competent, material, and substantial evidence. MCL 211.181(2)(b); MSA 7.7(5)(2)(b); *Kent Co, supra,* pp 652–653. [*Kalamazoo,* 221 Mich App at 538-539.]

The Tax Tribunal distinguished this case from *Kalamazoo*, relying principally on the decision in *Seymour* and *Golf Concepts*:

Petitioner alternatively contends that even if it is determined that the golf course is operated "for profit" it is used as a concession available for use by the general public. It does not appear to be disputed that the Management Agreement requires the property to be open to the public. Rather, the dispute is regarding whether the property is a "concession" as required by the statute.

The Tribunal has further reviewed the Management agreement and finds, unlike the agreement in the *Kalamazoo* case, Petitioner, rather than the Village has "extensive oversight" with regard to the operation of the subject property. The Tribunal finds that Petitioner's Management Agreement is more akin to the operation agreements in *Seymour v Dalton Twp,* and *Golf Concepts v City of Rochester Hills.* The rulings in *Seymour* and *Golf Concepts* held that the agreements did not impose appropriate obligations and restrictions upon the lessee. [Footnotes omitted.]

The Court in *Seymour* rejected the conclusion that a concession existed where the entire operation of a golf course was privatized:

The legal criteria supplied by reported decisions supplies minimal guidance. Unlike this case, reported decisions arise only in the context of concessions granted by airports. However, we conclude, based on the foregoing, that the agreement in this case does not amount to a concession. The agreement does little to impose obligations and restrictions upon Seymour stated with the requisite degree of specificity. Terms of an agreement characteristic of a concession, e.g., minimum hours, standards of service, or oversight of operations by the city, are conspicuously absent. Oversight of fees charged to the public is not strenuous; all that is required is that the fees will not exceed the upper end of that range of fees charged by competitors. The maintenance requirement is consistent with the city's interest in protecting its reversion after the termination of the agreement and does not appear to be directed toward exacting some specific term or service for the public benefit. Seymour had an unacceptable degree of discretion to run the golf course and related facilities as he saw fit, without the imposition of obligations directed toward the fulfillment of a public purpose.

We find ourselves in agreement with the conclusion of the hearing officer incorporated by the Tax Tribunal:

"[T]he notion of a 'concession' ... is ... that of a *subsidiary* business related to a public-oriented operation.... [A holding to the contrary that] would allow for a self-contained public entity ... leased to the private sector to qualify as a concession ... would give carte blanche to a governmental unit to lease out, for profit, one of any number of governmental enterprises and, with minimal restrictions on its operation, gain for it a favored tax status by simply denominating it a 'concession.'"

Although the cases discussed earlier did not need to reach the question of whether a concession need be incidental to and subsumed by the larger public purpose of the granting governmental entity, our conclusion in the affirmative is supported by a close reading of *Tygard, supra.* A concession is there defined as a "privilege or space granted or leased for a particular purpose *within* specific premises." *Id.,* 381 Mich at 275 (emphasis added). The concessionaire must be

obligated to offer services that "bear a reasonable relationship to the purposes" of the granting entity. *Id.* at 276. If that entity simply privatizes its entire operation, as the city did here, exemption from taxation would be at odds with the broader purpose of the lessee-user tax, which is to eliminate the unfair advantage that private-sector users of tax-exempt property would otherwise wield over their competitors leasing privately owned property. [*Seymour*, 177 Mich App at 408-410.]

Similarly, in *Golf Concepts*, 217 Mich App at 29, this Court rejected that the golf course operations in that case constituted a concession:

The provisions in the lease contract between the parties do not rise to the level of specific obligations on the part of petitioner, the privileged party, to maintain particular services at specified times. The provisions do not include requirements for minimum hours of operation, for petitioner's standards of service, or for respondent's oversight of the golf course operations. While the lease provisions demonstrate that respondent had some control over the operations, the provisions address broader management issues rather than specific obligations. For example, the lease in this case provides that respondent has the right to change the prices charged by petitioner. The *Seymour* Court observed, however, that the "[o]versight of fees charged to the public is not strenuous." *Id.* at 409. Likewise, in this case respondent had the right to inspect and regulate the maintenance of the property. The *Seymour* Court stated that the maintenance was consistent with the city's goal in protecting the property and that it did not exact a specific term or service for the public benefit. *Id.*

After reviewing these decisions, the Tax Tribunal rejected the petitioner's argument that the concession exemption applies in this case:

Here, the Management Agreement sets forth the following operation requirements:

A. NCGC shall operate the Golf Course on a play for pay basis in a manner that is available to all members of the general public without discrimination and regardless of residency.

B. Hours of operation for the Golf Course and related facilities shall be set at the reasonable discretion of NCGC, provided, however they are reasonably consistent with other golf courses in the northern lower peninsula of Michigan that provide open golf, outings, and league play.

C. The Village shall not be responsible for any memberships or gift certificates issued.

D. NCGC shall encourage youth golf, including cooperation and encouragement through promotional programs of instruction, tournaments and other activities that focus on youth participation.

E. For safety and maintenance reasons, the Golf Course shall not be used for non-golf activities during the term of this Agreement without the prior written consent of NCGC and the Village.

Like the agreements in *Seymour* and *Golf Concepts,* this does not set forth minimum hours of operation and leaves the hours within Petitioner's discretion, there is no oversight of the overall operations by the Village, and there are no true standards of service other than to require the encouragement of youth golf. The Tribunal finds that, based upon the Management Agreement, it is unable to conclude that Petitioner has demonstrated that the subject property qualifies as a concession under MCL 211.181(2)(b).

Given that tax exemptions are narrowly construed against the taxpayer and the deference that we must give to the decisions of the Tax Tribunal, we are not persuaded that the Tax Tribunal erred in determining that the concession exemption does not apply in this case. We agree with the Tax Tribunal that the agreement in this case left too much operational control in the hands of petitioner in privatizing the entire golf course operation. That is, similar to our analysis of the lessee-user question, under this agreement, petitioner operated a golf course on the village's property rather than operating a concession at the village's golf course.

Affirmed. Respondent may tax costs.

/s/ Brock A. Swartzle
/s/ David H. Sawyer
/s/ Jane E. Markey

-7-